## UNITED STATES DISTRICT COURT

### OFFICE OF THE CLERK
DISTRICT OF VERMONT
FEDERAL BUILDING
**BURLINGTON, VERMONT  05402-0945**

■  P.O. BOX 945
BURLINGTON 05402-0945
(802) 951-6301
❑   P.O. BOX 998
BRATTLEBORO 05302-0998
(802) 254-0250
❑   P.O. BOX 607
RUTLAND 05702-0607
(802) 773-0245

**RICHARD PAUL WASKO**
**CLERK**

August 29, 2005

MAGISTRATE JUDGE Dein

# 05 - 11802 DPW

Ms. Sarah Allison Thornton
Clerk
United States District Court
John Joseph Moakley United States Courthouse
Suite 2300
One Courthouse Way
Boston, MA 02210-3002

In Re: Carthaginian Financial Corporation v. Skinner, Inc.
Our Docket No. 2:05-cv-3

Dear Clerk of Court:

The above captioned case has been transferred to your district pursuant to
Doc. No. 15, Opinion and Order.  Enclosed is a certified copy of the docket sheet.  Please visit
URL for Quick Query: https://ecf.vtd.circ2.dcn/cgi-bin/pquery.pl  to download any documents
you may need.

Sincerely,

Richard Paul Wasko,
Clerk

By: Jessica Hook
        Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT


Carthaginian Financial Corp.,     :
    Plaintiff,                    :
                                  :
                                  :
    v.                            :  File No. 2:05-CV-3
                                  :
                                  :
Skinner, Inc.,                    :
    Defendant.                    :

### ORDER

The Report and Recommendation dated June 9, 2005 is
hereby renamed an Opinion and Order in light of the
consent to proceed before a Magistrate Judge filed August
25, 2005, pursuant to 28 U.S.C. 636(c).

The Clerk of Court is hereby ordered to transfer this
case to the District of Massachusetts.


Dated at Burlington, in the District of Vermont, this
26th day of August, 2005.


/s/Jerome J. Niedermeier

Jerome J. Niedermeier
United States Magistrate Judge

# U.S. District Court
## District of Vermont (Burlington)
## CIVIL DOCKET FOR CASE #: 2:05-cv-00003-jjn

Carthaginian Financial Corporation v. Skinner, Inc.
Assigned to: Jerome J. Niedermeier
Referred to:
Demand: $275000
Lead Docket: None
Related Cases: None
Case in other court: None
Cause: 28:1331 Fed. Question: Breach of Contract

Date Filed: 01/06/05
Jury Demand: Plaintiff
Nature of Suit: 195 Contract Product Liability
Jurisdiction: Diversity

**Plaintiff**
----------------------

**Carthaginian Financial Corporation**   represented by   **Thomas Niksa**
92 South Main Street, 1B
St. Albans, VT 05478
(802) 527-1010
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**
----------------------

**Skinner, Inc.**   represented by   **Heather Rider Hammond**
Gravel and Shea
P.O. Box 369
Burlington, VT 05402-0369
(802)658-0220
Fax : 96581456
Email: docketclerk@gravelshea.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Filing Date | Num# | Docket Text |
|---|---|---|
| 01/06/2005 | 1 | COMPLAINT against Skinner, Inc. filed by Carthaginian Financial Corporation. (Filing fee $150, receipt number #21947) Summons & Waivers issued. LR 73.1 Form Issued. (Attachments: # 1)(jse, ) [Entry Date 01/06/2005] |
| 01/18/2005 | 2 | WAIVER OF SERVICE Returned Executed by Carthaginian Financial Corporation. Skinner, Inc. waiver sent on 1/13/2005, answer due |



| | | |
|---|---|---|
| | | 3/14/2005. (jse, ) [Entry Date 01/18/2005] |
| 03/15/2005 | 3 | MOTION to Dismiss or, in the alternative, to Transfer Venue to the District of Massachusetts by Skinner, Inc. Responses due by 3/29/2005. Note: 3 additional days will be allowed for mailing in accordance with L.R. 6.1. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit 1# 7 Exhibit 2)(jlh, ) Modified on 6/3/2005 (jse, ). |
| 03/16/2005 | 4 | AFFIDAVIT of Janet Santaguida by Skinner, Inc.(jlh, ) [Entry Date 03/16/2005] |
| 03/28/2005 | 5 | RESPONSE in Opposition in re 3 MOTION to Dismiss filed by Carthaginian Financial Corporation. (jlh, ) [Entry Date 03/29/2005] |
| 04/13/2005 | 6 | REPLY to Response to Motion in re 3 MOTION to Dismiss filed by Skinner, Inc. (jlh, ) [Entry Date 04/13/2005] |
| 05/02/2005 | 7 | PLAINTIFF CARTHAGINIAN'S RESONSE TO SKINNER, INC, REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS UNDER FED R. CIV.P.12(B)(6) OR (B)(3) OR TRANSFER VENUE TO THE DISTRICT OF MASSACUSETTS. In re: 3 MOTION to Dismiss filed by Carthaginian Financial Corporation. (jlh, ) [Entry Date 05/02/2005] |
| 05/06/2005 | 8 | MOTION to Strike and incorporated memorandum of law in re 7 Reply to Response to Motion, by Skinner, Inc. Responses due by 5/20/2005. Note: 3 additional days will be allowed for mailing in accordance with L.R. 6.1. (jlh, ) [Entry Date 05/06/2005] |
| 06/03/2005 | 9 | REPORT AND RECOMMENDATIONS in re 1 Complaint filed by Carthaginian Financial Corparation, 3 MOTION to Dismiss filed by Skinner, Inc., Objections to R&R due by 6/17/2005. Signed by Judge Jerome J. Niedermeier on 6/3/2005. (jlh, ) [Entry Date 06/03/2005] |
| 06/09/2005 | 10 | MOTION for Extension of Time to File Response as to 9 REPORT AND RECOMMENDATIONS re 1 Complaint filed by Carthaginian Financial Corporation,, 3 MOTION to Dismiss filed by Skinner, Inc. by Skinner, Inc. until June 24, 2005. Responses due by 6/23/2005. Note: 3 additional days will be allowed for mailing in accordance with L.R. 6.1. (jlh, ) [Entry Date 06/09/2005] |
| 06/16/2005 | 11 | ORDER granting 10 Defendant's Motion for Extension of Time in Which to File Its Opposition to The Magistrate Judge's Report and Recommendation Responses due by 6/24/2005. Note: 3 additional days will be allowed for mailing in accordance with L.R. 6.1.Signed by Judge William K. Sessions III on 06/16/05. (This is a text only Order.) (eae) |

| | | [Entry Date 06/16/2005] |
|---|---|---|
| 06/16/2005 | | Reset Deadlines as to 9 REPORT AND RECOMMENDATIONS re 1 Complaint filed by Carthaginian Financial Corporation,, 3 MOTION to Dismiss filed by Skinner, Inc.,. Objections to R&R due by 6/24/2005 (jam, ) [Entry Date 06/16/2005] |
| 06/24/2005 | 12 | OBJECTION to 9 Report and Recommendations by Skinner, Inc.. (law, ) [Entry Date 06/24/2005] |
| 08/26/2005 | 15 | ORDER: The Report and Recommendation dated June 9, 2005 is hereby renamed an Opinion and Order in light of the consent to proceed before a Magistrate Judge filed August 25, 2005, pursuant to 28 U.S.C. 636(c). The Clerk of Court is hereby ordered to transfer this case to the District of Massachusetts. Signed by Judge Jerome J. Niedermeier on 8/26/2005. (jlh, ) [Entry Date 08/29/2005] |

I hereby attest and certify on
August 29, 2005 , that
the foregoing document is a full, true and correct
copy of the original on file in my office, and in my
legal custody.

**RICHARD PAUL WASKO**
Clerk, U.S. District Court
District of Vermont

BY: Jessica Hook
Deputy Clerk

U.S. DISTRICT COURT
DISTRICT OF VERMONT

UNITED STATES DISTRICT COURT FILED

FOR THE                    2005 JAN 6 AM 11 38

STATE OF VERMONT BY _____

DEPUTY CLERK

CARTHAGINIAN                    )
FINANCIAL CORPORATION           )
     Plaintiff              )
                                )
                                )     Docket Number  2:04-cv-3  05
    v.                         )
                                )
SKINNER, INC.                   )
     Defendant             )

## COMPLAINT.

TO THE HONORABLE, THE JUDGES OF THE ABOVE COURT:

On this day, the 6th day of January, 2005, comes the Plaintiff, Carthaginian Financial Corporation, and avers as follows:

1.  The Plaintiff is a Corporation that does business in the States of Vermont and Maine.

2.  The Defendant is a Corporation with a principal place of business in the State of Massachusetts.  Defendant Corporation is engaged in the business of receiving items of art and selling them for commission at auction.

3.  On or about September 2002, the Plaintiff placed numerous items with the Defendants on consignment for auction sale, including:

a).  A 17th century painting of Charles II, painter anonymous, valued at $100,000.

b).  A painting, allegedly of a young Napoleon I, painter anonymous, dating from the early 1800's, valued at $100,000.

c).  Several matching paintings of a nobleman, in the style of Titian.

d).  A Chippendale carved desk, valued at $75,000.

e).  A print of the city of Detroit, dated 1820.

f).  Other items listed in Exhibit A.

COUNT I:

4.   The above Paragraphs, 1 –3, are included in this Count.

5.   The Defendants had a duty to sell the items for the highest possible bid.  The same Defendants did substantially breach their duty to the Plaintiff to advertise, place and sell items listed in the attached exhibits for the highest possible price, selling them instead for greatly lessened amounts during or after September, 2002.

6.   In particular, the Charles II painting was placed in the "Discovery" lots when it should have been placed in the catalogue for viewing.

COUNT II:

7.   The above Paragraphs, 1-3 are included in this Count.

8.   The Defendants breeched their duty to earn the highest possible return for the Plaintiff by encouraging and facilitating a "knock out" auction of the Dunlop desk in the aftermath of the advertised sale on September 19, 2002, in which the desk subsequently changed hands for an amount much in excess of the sale that the Plaintiff was to be compensated from.

COUNT III:

9.   The above Paragraphs, 1-3 are included in this Count.

10.  The Defendants continue to retain a painting of a person believed to be Napoleon against the express desire of the Plaintiff corporation to have it returned to his possession.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

11.  The Court has original jurisdiction in this matter under the provisions of 28 U.S.C. §§ 1331 and 1332.

12.  At all times, the Plaintiff sought redress from the Defendants, with to no avail.

WHEREFORE, the Plaintiff, Carthaginian Financial Corporation, seeks damages in the amount of excess of $275,000 .

By the Plaintiff,

Thomas Niksa, Esq.
92 S. Main Street  1B
St. Albans, VT  05478
District Court Atty.
    ID No.  00766520
(802) 527-1010

JS 44 (Rev. 11/04)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS

Carthaginian Financial Corporation

**(b)** County of Residence of First Listed Plaintiff _Windham_
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Thomas Nika
92 S. Main St.
(802) 527-1010   St. Albans VT 05478

### DEFENDANTS

Skinner, Inc.

County of Residence of First Listed Defendant _Boston Mass_
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known) Gravel + Shea
P.O. Box 369
Burlington, VT   05402

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☑ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☑ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt. Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

### V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 9 1331 9 1332

Brief description of cause:
Breach ot contract for auction sale services

### VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes  ☐ No

### VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____   DOCKET NUMBER _____

DATE 6 January 2005

SIGNATURE OF ATTORNEY OF RECORD
Thomas Nika

Sm. + WW
LSU00

**FOR OFFICE USE ONLY**

RECEIPT # 2947   AMOUNT _____   APPLYING IFP _____   JUDGE 10BA   MAG. JUDGE _____

Consent forms given

2:05-cv-3

AO 399 (Rev. 10/95)

## WAIVER OF SERVICE OF SUMMONS

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2005 JAN 18  AM 9 12

CLERK

BY _____
DEPUTY CLERK

TO: _____ *Thomas Niksa* _____
(NAME OF PLAINTIFF'S ATTORNEY OR UNREPRESENTED PLAINTIFF)

I, _____ *Skinner, Inc.* _____ , acknowledge receipt of your request
(DEFENDANT NAME)

that I waive service of summons in the action of *Carthaginian Financial Co. vs. Skinner Inc.*
(CAPTION OF ACTION)

which is case number _____ *2:05-CV-3* _____ in the United States District Court
(DOCKET NUMBER)

for the _____ District of *Vermont* _____ .

I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after *13 Jan 2005*
(DATE REQUEST WAS SENT)

or within 90 days after that date if the request was sent outside the United States.

_____ *January 13, 2005* _____      *Heathe Rider Hammond*
(DATE)                                          (SIGNATURE)

Printed/Typed Name: *Heather Rider Hammond*

As *attorney*          of *Skinner, Inc.*
(TITLE)                            (CORPORATE DEFENDANT)

### Duty to Avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2005 MAR 15 AM 8 43

CLERK

BY _____
DEPUTY CLERK

CARTHAGINIAN                        )
FINANCIAL CORPORATION,              )
                    Plaintiff       )
                                    )
        v.                          )        Docket No.  2:05-CV-3
                                    )
SKINNER, INC.,                      )
                    Defendant       )


### DEFENDANT'S MOTION TO DISMISS UNDER FED.R.CIV.P. 12(B)(6) OR 12(B)(3) OR, IN THE ALTERNATIVE, TO TRANSFER VENUE TO THE DISTRICT OF MASSACHUSETTS AND INCORPORATED MEMORANDUM OF LAW

Defendant, Skinner, Inc. ("Skinner"), by and through its attorneys, Gravel and Shea,

hereby moves under Fed. R. Civ. P. 12(b)(6) to dismiss this case for failure to state a claim for

breach of contract or replevin upon which relief can be granted, and on the grounds that the

doctrine of res judicata bars Plaintiff's assertion of the claims contained therein.  In the

alternative, Skinner moves to dismiss this case for improper venue pursuant to Fed. R. Civ. P.

12(b)(3), or to transfer it pursuant to 28 U.S.C. § 1404(a) to the United States District Court for

the District of Massachusetts.  In support of its Motion, Skinner relies on the following

Memorandum of Law.

# MEMORANDUM OF LAW

## FACTUAL AND PROCEDURAL SUMMARY

On or about June 25, 2002, the parties entered into a consignment agreement (the "Agreement"), whereby Plaintiff Carthaginian Financial Corporation ("Carthaginian"), consigned to Skinner various pieces of artwork and antiques (the "Property"), and authorized Skinner to offer the Property for sale at a public auction. *See* Agreement, attached hereto as Exhibit A.[1] Skinner listed the individual pieces in the Agreement and provided a pre-sale high and low estimated price range for each item. *See id.* The Agreement specifically states that:

> The Consignor agrees that Skinner's pre-sale estimate whether expressed in a catalogue or this Agreement or in any other manner is not a guarantee of the actual value or obtainable price of any Property. The Consignor further agrees that the condition of the Property, as determined by Skinner's specialists, may be noted in the catalogue description and that Skinner will not be held liable for any errors and omissions in its pre-sale estimate or description of the Property.

Agreement, ¶ 5. Further, the Agreement provides that, "[t]he time, place, and manner and all conditions of sale, including division of the Property into saleable lots, shall be determined solely by Skinner." *Id.* ¶ 4.

Skinner held several auctions of the Property during the fall of 2002. At the conclusion of the auctions, several items remained unsold. Under the terms of the Agreement, "[i]n the event that any of the Property remains unsold, Skinner may at its option (a) reoffer the Property at a reduced pre-sale estimate at a subsequent public sale to the highest bidder, or (b) return the

---

[1] The Court may properly consider documents referenced in a complaint in deciding a motion to dismiss. *See* 2 J. Moore, *Moore's Federal Practice*, § 12.34[2] (2003) (In deciding a motion to dismiss, a court may examine "[d]ocuments attached to complaint" and "undisputed documents alleged or referenced in the complaint").

unsold Property to the Consignor at the Consignor's expense." Agreement, ¶ 9.  Skinner

attempted on several occasions to arrange for Donald Flynn, Carthaginian's representative, to

pick up the remaining items.

On or about July 22, 2004, Carthaginian's representative, Donald Flynn, filed a *pro se*

Complaint on behalf of Carthaginian in the Superior Court of the State of Vermont for the

County of Windham, claiming that Skinner performed acts prohibited under the federal

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, by

miscataloguing and devaluing the Property, and alleging damages in the amount of $10 million

("*Carthaginian I*").  Skinner was served with the Complaint on August 25, 2004, and timely filed

its Notice of Removal to the United States District Court for the District of Vermont on

September 13, 2004, as well as a Motion to Dismiss under Fed. R. Civ.P. 12(b)(6) for failure to

state a claim for violations of RICO.  Plaintiff failed to respond to that Motion, and on December

7, 2004, this Court dismissed the action with prejudice, agreeing with Skinner that Plaintiff had

failed to allege a RICO claim.  *Carthaginian Financial Corp. v. Skinner, Inc.*, No. 1:04-cv-236

(D. Vt. Dec. 7, 2004) (Murtha, J.).  This Order was not appealed, and Mr. Flynn did not move for

leave to amend the Complaint.

Carthaginian then filed the instant action, claiming once again that Skinner had breached

its duties under the Agreement by miscataloguing and devaluing the Property so that the pieces

would fetch less at auction.[2]  *See* Complaint, ¶ 5, 8.  It also alleges that Mr. Flynn requested that

---

[2]  Plaintiff makes this claim in spite of the fact that it would be contrary to Skinner's own
financial interests to undervalue and miscatalogue the Property, since the Agreement provides for
Skinner to retain as commission a portion of the proceeds of each sale.  *See* Agreement, ¶ 2.

certain items be withdrawn from auction and returned to him, and that Skinner failed to comply with this request. *See id.*, ¶ 10. Plaintiff claims that the acts or omissions by Skinner constitute breach of contract and replevin,[3] and that it has been damaged in excess of the amount of $275,000.00.

Carthaginian's Complaint should be dismissed, because it fails to state a claim for either breach of contract or replevin. As further discussed below, the duties and obligations that Skinner had toward Plaintiff are unambiguously set forth in the Agreement, and do not include a duty to "sell the items for the highest possible bid," or to "earn the highest possible return for the Plaintiff," as alleged in the Complaint. Moreover, Plaintiff cannot show that the painting referred to in Paragraph 10 of the Complaint was unlawfully taken or detained, and therefore has not stated a claim for replevin. Plaintiff's claims should also be dismissed on res judicata grounds, since the claims contained in the Complaint arise out of the same set of facts and circumstances as those raised in *Carthaginian I.*

In the alternative, this action should be dismissed for improper venue or transferred to the District of Massachusetts. Skinner is a Massachusetts corporation with no corporate offices in Vermont. *See* Affidavit of Janet Santaguida ("Santaguida Affidavit"), attached hereto as Exhibit C. Carthaginian is a Nevada corporation, and Mr. Flynn, the representative of Carthaginian who executed the Agreement, is, upon information and belief, either a Maine or Nevada resident. *See id.* Moreover, the Agreement includes a valid, enforceable forum selection clause requiring that "any action against Skinner in connection with the transactions contemplated by this Agreement

---

[3] Plaintiff does not actually state that Count III of its Complaint is a claim for replevin, but Skinner has inferred such an allegation from Paragraph 10 of the Complaint.

shall be brought in the Commonwealth of Massachusetts or any federal court sitting therein."

Agreement, ¶ 14. For these reasons and others stated below, if this Court does not dismiss this

action on the merits, it should be dismissed based on improper venue, or venue should be

transferred to the United States District Court for the District of Massachusetts.

<u>ARGUMENT</u>

I.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A
      CLAIM.

A.    <u>Standard Of Review.</u>

       In determining whether to grant a motion to dismiss, this Court must accept as true all

well-pleaded allegations in the complaint. *Albright v. Oliver,* 510 U.S. 266, 268 (1994).

However, "[c]onclusory allegations of the legal status of defendants' acts need not be accepted as

true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.,* 72

F.3d 1085, 1092 (2d Cir. 1995) (citation omitted); *see also Schaer v. Brandeis Univ.,* 432 Mass.

474, 477, 735 N.E.2d 373, 378 (2000) ("[W]e do not accept legal conclusions cast in the form of

factual allegations"); *Judge v. City of Lowell,* 160 F.3d 67, 77 (1st Cir. 1998) (overruled on other

grounds) ("The rule that we accept plaintiff's well-pleaded factual averments and indulge every

reasonable inference hospitable to [its] case does not entitle a plaintiff to rest on subjective

characterizations or conclusory descriptions of a general scenario which could be dominated by

unpleaded facts"). [4]

---

[4] Under the terms of the Agreement, Massachusetts law must apply to this case. *See* Agreement,
¶ 14 ("The Agreement shall be governed by the laws of the Commonwealth of Massachusetts (excluding
the laws applicable to conflicts or choice of law)").

B.     Plaintiff Has Failed To State A Claim For Breach Of Contract.

In this case, there are no facts or circumstances that could give rise to a valid claim for

breach of contract, since Skinner's duties to Carthaginian are unambiguously defined by the

Agreement.  As stated above, the Agreement authorized Skinner to offer the Property for sale at a

public auction, in exchange for a commission.  Carthaginian agreed that "the time, place, manner

and all condition of sale, including division of the Property into saleable lots, shall be determined

solely by Skinner."  Agreement, ¶ 4.  Skinner had provided a pre-sale high and low estimate of

each piece of the Property, which Carthaginian had an opportunity to review before entering into

the Agreement.  Skinner reserved the right to revise any such estimate, and Carthaginian

expressly agreed that "Skinner's pre-sale estimate whether expressed in a catalogue or in this

Agreement or in any other manner is not a guarantee of the actual value or obtainable price of

any Property."  Agreement, ¶ 5.  This fact was also emphasized, in capitalized bold letters that

read:  **"SKINNER MAKES NO GUARANTEES, REPRESENTATIONS OR**

**WARRANTIES WHATSOEVER TO YOU WITH RESPECT TO THE PROPERTY, ITS**

**AUTHENTICITY, ATTRIBUTION, CONDITION, VALUE OR OTHERWISE."**  *Id.*

Moreover, if an item remained unsold at the conclusion of the auction, Skinner had the right to

either "(a) reoffer the Property at a reduced pre-sale estimate at a subsequent public sale to the

highest bidder, or (b) return the unsold Property to the Consignor at the Consignor's expense."

*Id.* ¶ 9.

Despite this language, Plaintiff alleges that Skinner had a "duty to sell the items for the

highest possible bid," and to "earn the highest possible return for Plaintiff."  It then alleges that

Skinner breached its duty by improperly cataloguing certain items and by "encouraging and facilitating a 'knock out' auction" of a certain item. Complaint, ¶¶ 5,8. It is well-settled that a "contract is a promise or set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." *I&R Mechanical, Inc. v. Hazelton Mfg. Co.*, 62 Mass. App. Ct. 452, 454, 817 N.E.2d 799, 802 (2004) (citing Restatement (Second) of Contracts § 1 (1981)). The contract language governs the scope of the duties between the parties, and there can be no "breach of contract" where there is no duty. *See, e.g., Barnes v. Metropolitan Housing Assistance Program*, 425 Mass. 79, 84, 679 N.E.2d 545, 548 (1997) (defendant owed no duty to tenant in subsidized housing where contract with owner of housing contained exclusionary clauses); *Carey v. Malley*, 327 Mass. 189, 193, 97 N.E.2d 645, 648 (1951) (landlord must assume contractual duty to keep exterior areas free of snow and ice in order to be held liable for breach of that duty).

An unambiguous contract must be enforced according to its terms. *See Freelander v. G.K. Realty Corp.*, 357 Mass. 512, 516, 258 N.E.2d 786, 788 (1970) ("interpretation of unambiguous language in written contract is a question of law and if the words of a contract are plain and free from ambiguity, they must be construed in accordance with their terms"). In doing so, "a contract must also be interpreted as a whole and effect must be given to all of its provisions in order to effectuate its overall purpose." *Baybank Middlesex v. 1200 Beacon Properties, Inc.*, 760 F. Supp. 957, 963 (D. Mass. 1991). In this case, the relative duties between Skinner and Carthaginian are clearly and unambiguously set forth in the Agreement – Skinner was obligated to offer the Property for sale at a public auction in exchange for a commission.

Contrary to the representations of Carthaginian, Skinner had no obligation to sell items for "the highest possible bid" or to "earn the highest possible return" for Carthaginian, and clearly had the right to place unsold items in a subsequent auction at a reduced estimated price.

Because Carthaginian has not identified a contractual duty that was violated by Skinner, its claim for breach of contract must be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6).

C.    Plaintiff Has Failed To State A Claim For Replevin.

Count III of Carthaginian's Complaint alleges that Skinner has retained a painting against Carthaginian's expressed desire to have it returned. Although not clearly stated, Skinner assumes that this a claim for replevin. Under Massachusetts law, the elements of replevin are: "(1) the goods in question have a value of greater than twenty dollars; (2) the goods are unlawfully taken or retained; and (3) the owner or person entitled to possession is deprived of the goods." *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 806 F. Supp. 291, 295 (D. Mass. 1992); Mass. Gen. L. ch. 247 § 7. Plaintiff has not, and cannot, state a claim for replevin under the facts of this case, and this count should be dismissed.

It is clear from the terms of the Agreement that in the event an item did not sell at auction, Skinner had the right either to reoffer the Property at a reduced estimate at a reduced rate or return it to Mr. Flynn. *See* Agreement, at ¶ 9. As a result, Carthaginian cannot show that the Napoleon painting referred to in the Complaint was "unlawfully taken." Additionally, Plaintiff cannot show that the painting was "unlawfully retained," since Skinner attempted on several occasions to arrange for Mr. Flynn to pick up his unsold items, including the painting. *See* Exhibits 1 and 2 to Santaguida Affidavit. Mr. Flynn has never returned for the paintings.

Because Carthaginian has failed to state a claim for replevin, Count III of its Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

D.    Plaintiff's Claims Are Barred By The Doctrine Of Res Judicata.

The breach of contract claims raised in the Complaint are identical to those raised in Plaintiff's prior action, but are merely presented under different legal theories. Moreover, Plaintiff's replevin claim arises out of facts that existed at the time *Carthaginian I* was filed. Plaintiff has already had a full and fair opportunity to litigate his claims before this Court, and neither Skinner nor this Court should be burdened with this type of repetitive litigation. Plaintiff's claims should be dismissed on the grounds that they are barred by the doctrine of res judicata.

1.    This Court May Take Judicial Notice Of Prior Proceedings.

In deciding a Rule 12(b)(6) motion to dismiss, this Court may take judicial notice of a prior court order and prior pleadings.[5] *See Day v. Moscow*, 955 F.2d 807, 811 (2d Cir.), *cert. denied* 506 U.S. 821 (1992) (court properly considered previously dismissed complaint in evaluating motion to dismiss); *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3rd Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint"). Based upon the public record, this Court may then determine as a matter of law whether the allegations set forth in the Complaint, even if accepted as true, provide a complete defense to liability on the grounds that they reiterate claims which were or could have been

---

[5] Pursuant to Fed. R. Evid. 201, Skinner respectfully requests the Court to take judicial notice of the proceedings in *Carthaginian I*.

brought in a prior proceedings. 2 J. Moore, *Moore's Federal Practice* § 12.34[4][b] ("Dismissal under Rule 12(b)(6) may also be appropriate when a successful affirmative defense or other bar to relief appears on the face of the complaint, such as . . . claim preclusion . . . ."). As demonstrated below, the doctrine of res judicata clearly bars the claims contained within Plaintiff's Complaint.

> 2.    Res Judicata Bars Plaintiff From Asserting The Claims Set Forth In His Complaint.

"Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been raised in that action*." *Flaherety v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999) (internal citation omitted) (emphasis in original). Accordingly, in "disputes over private rights by private litigants," "no significant harm flows from enforcing a rule that affords a litigant one full and fair opportunity to litigate an issue, and there is no sound reason for burdening the courts with repetitious litigation." *Standefer v. United States*, 447 U.S. 10, 24 (1980).

Examination of the record reveals that the alleged acts and omissions performed by Skinner, which provide the factual basis for the breach of contract claims in the instant action, were also raised by Plaintiff in *Carthaginian I*. *Compare* Complaint in *Carthaginian I* (attached as Exhibit B) (pages 3-4, Exhibit C):

> Defendants did everything in their power to miscatalogue; to lower the auction value I would receive . . . . Everything ended up in "Discovery" junk sales . . . . A fine and rare Dunlop desk on frame (worth $60 - 80,000) was catalogued by Fletcher "Birch Chippendale" slant front desk. I faxed half a dozen top dealers, and a pool of dealers bought it for $5000; then the dealers had a "knock out" auction in the parking lot . . . . Fesco and Fletcher [who are Skinner employees] dumped the Charles II portrait in Junk "Discovery" Auction.

*with* the Complaint in the instant action (¶¶ 3, 5, 6, 8):

> The Plaintiff placed numerous items with the Defendants on consignment for auction sale, including a 17th century painting of Charles II . . . . Defendants breached their duty to the Plaintiff to advertise, place and sell items listed in the attached exhibits for the highest possible price, selling them instead for greatly lessened amounts. . . . In particular, the Charles II painting was placed in the "Discovery" lots . . . The Defendants [breached] their duty . . . by encouraging and facilitating a 'knock out' auction of the Dunlop desk.

"New legal theories do not amount to a new cause of action so as to defeat the application of the principle of res judicata." *In re Teltronics Svcs., Inc.*, 762 F.2d 185, 193 (2d Cir. 1985); *L-Tec Electronics Corp. v. Cougar Electronics Organization, Inc.*, 198 F.3d 85, 88 (2d Cir. 1999) ("Even claims based upon different legal theories are barred [by the doctrine of res judicata] provided they arise from the same transaction and occurrence"). Plaintiff therefore gains nothing by repackaging his RICO claims as breach of contract, because they arose out of the same transaction and occurrence as the allegations raised in *Carthaginian I.*

Moreover, in *Carthaginian I*, Plaintiff attached correspondence to its Complaint that indicated that the painting that is the subject of its current replevin claim was in Skinner's custody. *See* Exhibit B to *Carthaginian I* Complaint (letter dated November 18, 2002 asking Skinner to place Charles II painting in "same protective custody" as the Napoleon painting); Exhibit D to *Carthaginian I* Complaint (asking to arrange to pick up Napoleon painting). Since the Napoleon painting was in Skinner's custody at the time *Carthaginian I* was filed, the replevin claim could have, and should have, been raised at that time.

Plaintiff had a full and fair opportunity to litigate its claims in *Carthaginian I* and is entitled to repose from repetitious and frivolous litigation. A consideration of the instant

Complaint against the backdrop of the public record reveals that Plaintiff has alleged no version

of facts that would permit the Court to resolve the claims set forth therein in his favor. Pursuant

to Fed. R. Civ. P. 12(b)(6), dismissal of the Complaint is therefore warranted.

II.    THIS CASE SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(3) BASED ON
       IMPROPER VENUE.

Rule 12(b)(3) of the Federal Rules of Civil Procedure provides for dismissal of claims

based on improper venue. "Venue is improper and thus subject to dismissal under 12(b)(3)

where the action is commenced in a court other than one selected by the parties by way of a valid

forum selection clause." *Vanlab Corp. v. Blossom Valley Foods Corp.*, No. 04-cv-6183,

2005 WL 43772, at *2 (W.D.N.Y. Jan. 10, 2005). In this case, the parties agreed that any action

would be brought in Massachusetts state court or federal court. Because the forum selection

clause is enforceable, this case should be dismissed because it was brought in the wrong venue.

The Agreement states as follows:

> The Consignor agrees that any suit for the enforcement of this Agreement may be
> brought, *and any action against Skinner in connection with the transactions
> contemplated by this Agreement shall be brought,* in the courts of the Commonwealth
> of Massachusetts or any federal court sitting therein. The Consignor consents to the
> nonexclusive jurisdiction of such courts and waives objection that it may now or
> hereafter have to the venue of any such suit.

Agreement, ¶ 14 (emphasis added). The United States Supreme Court has held that a contractual

forum selection clause should be enforced "unless it is clearly shown that enforcement would be

unreasonable and unjust or that the clause was obtained through fraud or overreaching." *M/S

Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). Pursuant to the Agreement,

Carthaginian agreed to submit itself to the jurisdiction of any Massachusetts federal or state court. "There exists a 'strong presumption' favoring enforcement of 'freely negotiated choice-of-forum provisions,' and a litigant must make a strong showing to overcome this presumption." *Mastec Latin America v. Inepar S/A Industrias E Construcoes*, No. 03 Civ. 9892, 2004 WL 1574732, at *3 (S.D.N.Y. July 13, 2004) (citing *Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).

Because the forum selection clause is valid, it should be enforced, and this Court should dismiss this action pursuant to Fed. R. Civ. P. 12(b)(3).

III.    IN THE ALTERNATIVE, THIS CASE SHOULD BE TRANSFERRED UNDER
        28 U.S.C. § 1404(a) TO THE UNITED STATES DISTRICT COURT FOR THE
        DISTRICT OF MASSACHUSETTS.

Change of venue is governed by 28 U.S.C. § 1404(a), which states that: "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The burden is on the defendant as moving party to establish that there should be a change of forum. *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir. 1950), *cert. denied* 340 U.S. 851 (1950). "The district court is vested with discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Country Home Products, Inc. v. Schiller-Pfeiffer, Inc.*, 350 F. Supp. 2d 561, 569 (D. Vt. 2004).

A.    Venue Is Improper In Vermont, And Proper In Massachusetts.

This case could have, and should have, been brought in Massachusetts, because

Massachusetts was the only proper forum.  As stated above in Section II, *supra*, Carthaginian

agreed to litigate any action against Skinner arising out of the transactions contemplated by the

Agreement in Massachusetts state or federal court.  As a result, this case was improperly brought

in Vermont, and should have been brought in Massachusetts.

B.    The Relevant Factors Weigh In Favor Of Transferring This Case To Massachusetts.

A district court should consider the following factors when deciding whether to transfer

an action to another district court:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the district court's familiarity with governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interest of justice.

*DiStefano v. Carozzi North America, Inc.*, No. 98 CV 7137 (SJ), 2002 WL 31640476, at *1

(E.D.N.Y. Nov. 16, 2002); *see also Schwartz v. Marriott Hotel Servs. Inc.*, 186 F. Supp. 2d 245,

248 (E.D.N.Y. 1994).  As described more fully below, there is clear and convincing evidence that

this case should be transferred to Massachusetts.

1.    Convenience Of The Parties And The Witnesses And Compulsory Process.

"The convenience of witnesses is probably the single-most important factor used to

determine whether to transfer a case."  *Sherman Street Assocs., LLC v. JTH Tax, Inc.*, No.

CIVA3:03cv1875 (CFD), 2004 WL 2377227, at *5 (D. Conn. Sept. 30, 2004); *Arrow Elecs., Inc.*

*v. Ducummum, Inc.*, 724 F. Supp. 264, 265 (S.D.N.Y. 1989). In this case, most of the witnesses relevant to the issues raised are located in Massachusetts. *See* Santaguida Affidavit, Exhibit C, at ¶ 8. At least one witness is not an employee of Skinner, and may not be willing to testify voluntarily. *See* Santaguida Affidavit, ¶ 8(e). That person may not be subject to subpoena under Fed. R. Civ. P. 45(c)(3)(A)(ii). "[T]o fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their case on deposition, is to create a condition not satisfactory to the court, jury, or most litigants." *Gulfoil v. Gilbert*, 330 U.S. 501, 511 (1947). Additionally, upon information and belief, Donald Flynn, the corporate representative of Carthaginian who entered into the Agreement is either a resident of Maine or Nevada. *See* records from Nevada Secretary of State, Exhibit D; Santaguida Affidavit, ¶ 7. As far as convenience to the parties is concerned, Skinner maintains its corporate offices and all of its records in Massachusetts. Santaguida Affidavit, ¶¶ 3-4. Carthaginian is a Nevada corporation, and is not even registered as a foreign corporation to do business in Vermont. *See* Exhibit D; records from Vermont Secretary of State, Exhibit E.[6]

Since the majority of the relevant witnesses are Massachusetts residents, and because neither Carthaginian nor its representative who entered into the Agreement are residents of Vermont, this factor weighs heavily in favor of transferring venue to Massachusetts.

---

[6] Because Carthaginian has failed to obtain a certificate of authority from the Vermont Secretary of State, it is precluded from maintaining a proceeding in any court in Vermont. *See* 11B V.S.A. § 15.02(a).

2.    Locus Of Operative Facts, Location Of Documents, And Ease Of Access To Sources Of Proof.

While it is true that the Agreement was entered into in Vermont, the auction was prepared and occurred in Massachusetts, and the Property was stored in Massachusetts. Santaguida Affidavit, ¶ 3. The remainder of the documents relevant to this action, including documents related to Skinner's policies and procedures for setting its pre-sale estimates and conducting its auctions, are located in Massachusetts, as is the painting that is the subject of Count III. *Id.* ¶ 5. While the documents themselves are arguably easily transferrable, the painting is not. As a result, this factor weighs in favor of transfer to Massachusetts.

3.    The Relative Means Of The Parties.

A court may consider the relative means of the parties when determining whether to transfer venue. *See DiStefano*, 2002 WL 31640476, at *3 ("Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed"). In this case, the relative means of the parties will not likely be a material consideration by the Court, because both entities are corporations, and because neither Carthaginian nor its representative are Vermont residents, and would have to travel either to Vermont or Massachusetts for trial.[7]

4.    The Court's Familiarity With The Governing Law.

Under the terms of the Agreement, Massachusetts law applies to this case. While this Court is certainly competent to apply Massachusetts law, this fact weighs in favor of transferring

---

[7]    It would likely be more cost-effective for Mr. Flynn to travel to Massachusetts, since flights to Boston are generally cheaper and easier than those to Burlington, Vermont. Moreover, if Mr. Flynn is a resident of Maine, it would be easier and faster to travel to Massachusetts than Vermont.

venue to Massachusetts. *See Ferens v. John Deere Co.*, 494 U.S. 516, 530 (1990) (courts favor

"having the trial of a diversity case in a forum that is at home with the state law that must govern

the case").

        5.     Plaintiff's Choice Of Forum.

While a plaintiff's choice of forum is "generally entitled to considerable weight,"

*Schwartz*, 186 F. Supp. 2d at 251, it is also true that that weight is diminished by the fact that Mr.

Flynn is not a resident of Vermont, and Carthaginian not only has no corporate presence in

Vermont, it has not even registered to do business in Vermont in accordance with its obligations

under Vermont law. 11B V.S.A. § 1501. *See Cali v. East Coast Aviation Servs., Ltd.*, 178 F.

Supp. 2d 276, 292 (E.D.N.Y. 2001) ("when the plaintiff does not reside in the chosen forum, and

the plaintiff's chosen forum has no material connection to the facts or issues of the case, that

weight is diminished").

        6.     Interests Of Justice.

Plainly, the interests of justice support transferring this case to Massachusetts. *See*

*Schneider v. Sears*, 265 F. Supp. 257, 263 (S.D.N.Y. 1967) (factor is "broad enough to cover the

particular circumstances of each case, which in sum indicate that the administration of justice

will be advances by a transfer"). As stated above, the parties agreed to litigate in Massachusetts,

Skinner's corporate offices and witnesses are in Massachusetts, and all of the relevant evidentiary

material is located in Massachusetts. Moreover, this is not a case where Vermont's "important

interest in protecting its . . . business interests" will be served by keeping this case in Vermont,

since Carthaginian is not a Vermont corporation, and apparently does no business here. *Real*

*Good Toys, Inc. v. XL Machine Ltd.*, 163 F. Supp. 2d 421, 426 (D. Vt. 2001). If the interests of

justice are to be served, this Court should transfer this action to Massachusetts.

CONCLUSION

For all the foregoing reasons, Defendant Skinner, Inc. respectfully requests that this Court

dismiss this case under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for breach of contract

or replevin or on res judicata grounds, or under Fed. R. Civ. P. 12(b)(3) for improper venue. In

the alternative, Skinner requests that this Court transfer venue to the United States District Court

for the District of Massachusetts.

Dated:        Burlington, Vermont
              March 14, 2005


_____
Heather Rider Hammond, Esq.
Gravel and Shea
76 St. Paul Street, 7th Floor
P. O. Box 369
Burlington, VT  05402-0369
(802) 658-0220
For Defendant

<237984.2/53m_011.WPD/>

CERTIFICATE OF SERVICE

I, Heather Rider Hammond, Esq., attorney for Defendant, certify that on March 14, 2005,

I served Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) or 12(b)(3) or, in the

Alternative, To Transfer Venue to the District Of Massachusetts and Incorporated Memorandum

of Law, on Thomas Niksa, Esq., by causing a copy to be mailed, postage prepaid to him at

92 South Main Street, 1B, St. Albans, VT  05478.

Dated:        Burlington, Vermont
              March 14, 2005

_Heather Rider Hammond_
Heather Rider Hammond, Esq.
Gravel and Shea
76 St. Paul Street, 7th Floor
P. O. Box 369
Burlington, VT  05402-0369
(802) 658-0220
For Defendant

08/27/2004 17:11 FAX 9787779144                                              002/003

# SKINNER

RECEIPT No. 10640

( ✓ ) IF, PREVIOUS ☐    ADDRESS CHANGE ☐
CONSIGNOR

PAYMENT TO    Carthaginian Financial Corp.
17 Rockingham Street
Bellows Falls, VT 05101

OLD ADDRESS

CORRESPONDENCE ☒
APPOINTMENT ☒
APPRAISAL DAY ☐          TELEPHONE DAY
HOUSECALL ☐              EVENING
WALK-IN ☐               DATE

(PICK-UP ADDRESS)        CALL INITIATED BY  SLF  FOR
                         BOLTON ☒          BOSTON ☐

                         SPECIAL INSTR

TRANSPORTATION PAID BY CONSIGNOR
TRANSP. STAFF  EJ BL   HRS  2   DATE P/UP  7/10/02

| ITEM NO. | TYPE OF SALE | DESCRIPTION | ESTIMATE RANGE | |
|---|---|---|---|---|
| 1 | EC | Painting of Noblemen | 2000 4000 | |
| 2 | EC | Painting of Noblewomen (manner of Titian) | 1500 3000 | |
| 3 | EC | Painting of Noblemen | 1500 2200 | |

1. **CONSIGNMENT:** The Consignor hereby consigns to Skinner, Inc. ("Skinner") the Property ("Property") identified above and in any additional receipt referencing this Agreement, authorizes Skinner, as Consignor's agent, to offer such Property for sale at public auction and agrees to the following terms and conditions.

2. **COMMISSION:** Skinner will receive and retain as its commission from the proceeds of the sale (a) an amount equal to the greater of (i) 20 percent of the final bid and (ii) $30, on each Lot sold for less than $2,000, (b) an amount equal to 15 percent of the final bid on each Lot sold for $2,000 or more, but less than $7,500, and (c) an amount equal to 10 percent of the final bid on each Lot sold for $7,500 or more. In addition, Skinner will collect from the Purchaser of the Property ("Purchaser") an amount equal to the greater of (i) 17½ percent of the final bid price up to and including $80,000 plus 10 percent of the final bid over $80,000 and (ii) Skinner's buyer's premium prevailing at the time of sale, as stated in the conditions of sale governing the sale.

3. **INSURANCE:** Skinner shall maintain insurance on the Property while the Property is in Skinner's possession in an amount equal to Skinner's average pre-sale high and low Property estimate (the "net insurable value"). In consideration of Skinner's maintenance of insurance on the Property, the Consignor agrees to pay to Skinner an amount equal to 1 percent of the final bid on each Lot sold. Such amount will be payable to Skinner upon the sale of the Property and will be withheld by Skinner from the net proceeds of sale payable to the Consignor under paragraph 11. In the event that some or all of the Property remains unsold after its initially scheduled sale date or if some or all of the Property is never scheduled for sale, the Consignor agrees to pay to Skinner an amount equal to 1 percent of the net insurable value on demand by Skinner. The Consignor hereby confirms and agrees that in the event of damage to or theft or loss of the Property, Skinner's liability shall in no event exceed net insurable value. Skinner shall in no event be liable or responsible for any damage to gessoed frames, nor shall Skinner be responsible for maintaining any special storage conditions for any Property.

**THIS AGREEMENT IS SUBJECT TO THE ADDITIONAL TERMS AND CONDITIONS CONTAINED ON THE REVERSE SIDE HEREOF.**

DATED:  25 June 2002
Carthaginian Fin. Corp P Flynn   Pres
CONSIGNOR SIGNATURE                          SKINNER, INC. REPRESENTATIVE

The Heritage On The Garden          SKINNER, INC.          357 Main Street
63 Park Plaza, Boston, MA 02116     Auctioneers and        Bolton, MA 01740
617.350.5400                        Appraisers of Antiques  978.779.6241
Fax: 617.350.5429                   and Fine Art           Fax: 978.779.5144
                                    CONSIGNOR

4.     AUCTION: The time, place, manner and all conditions of sale, including division of the Property into saleable lots, shall be determined solely by Skinner. For the purpose of the Agreement, "Lot" shall mean one or more items of Property that are offered for sale as a single catalogued unit. Unless otherwise agreed upon in a document signed by the Consignor and Skinner, all Property will be sold without reserve to the highest bidder.

5.     PRE-SALE ESTIMATES AND CATALOGUE DESCRIPTION: Skinner has determined the pre-sale high and low estimate of each item of the Property as indicated on the front page of the Agreement and any continuation sheet. Skinner reserves the right to revise any such estimate. As a service to prospective bidders, Skinner will publish in its catalogue pre-sale estimates of the value of the Property. The Consignor agrees that Skinner's pre-sale estimate whether expressed in a catalogue or in this Agreement or in any other manner is not a guarantee of the actual value or obtainable price of any Property. The Consignor further agrees that the condition of the Property, as determined by Skinner's specialists, may be noted in the catalogue description and that Skinner will not be held liable for any errors or omissions in its pre-sale estimate or description of the Property. SKINNER MAKES NO GUARANTEES, REPRESENTATIONS OR WARRANTIES WHATSOEVER TO YOU WITH RESPECT TO THE PROPERTY, ITS AUTHENTICITY, ATTRIBUTION, CONDITION, VALUE OR OTHERWISE.

6.     BIDDING: The Consignor agrees not to bid, directly or indirectly, on the Property. If the Consignor violates the foregoing Agreement and the Consignor becomes the successful bidder, the Consignor will pay to Skinner the commissions described in paragraph 2, including the Purchaser's premium, as liquidated damages.

7.     WARRANTIES; INDEMNITY: The Consignor warrants that he/she has the right to consign the Property for sale; that until its sale, the Property will be kept free of all liens, claims, and encumbrances; that good title and right to possession will pass to the Purchaser free of all liens, claims, and encumbrances; that all Consignor's descriptions of the Property and its origins are accurate and that there are no restrictions on Skinner's right to reproduce photographs and graphic representations of the Property. The Consignor agrees to indemnify and hold Skinner harmless from and against any and all claims, damages, liabilities and expenses (including reasonable attorney's fees) and any losses, including lost commissions, relating to the breach of any Consignor's obligations, representations, or warranties herein. If Consignor is acting as an agent for a principal, Consignor and principal, jointly and severally, assume all of the obligations under this Agreement.

8.     WITHDRAWAL: If Consignor withdraws any Property from the sale after the execution of this Agreement, the Consignor will pay Skinner, upon-demand, 35 percent of the average of the pre-sale catalogue high and low Property estimates; or if such estimate has not yet been published, the Consignor will pay Skinner, upon demand, 35 percent of the value of the Property as then estimated by Skinner. Skinner may withdraw any Property from sale if Skinner believes that there are doubts as to the Property's ownership, authenticity, or attribution.

9.     UNSOLD PROPERTY: Skinner reserves the right, but undertakes no obligation, to reject the opening bid of the Property if such bid is deemed by Skinner, in its sole discretion, to be unacceptably low. In the event that any of the Property remains unsold, Skinner may at its option (a) reoffer the Property at a reduced pre-sale estimate at a subsequent public sale to the highest bidder, or (b) return the unsold Property to the Consignor at the Consignor's expense.

10.     ADDITIONAL CHARGES: Consignor agrees to pay the following additional charges: (1) Transportation: If Skinner transports any Property to Skinner's place of business, the Consignor shall pay Skinner a transportation charge of an amount equal to the greater of (i) $125 per hour and (ii) the then prevailing hourly rate for comparable services. (2) Photography: Consignor agrees that any property consigned may be photographed for catalogues and advertising purposes. Consignor agrees to pay the current photography fee rate in effect at the time of consignment. (3) Storage: Skinner may, at its election, impose a monthly storage charge equal to 1.5 percent of the average of the pre-sale high and low estimates on all Property withdrawn from sale and all Property offered for sale but not sold. At the option of Skinner, such Property may be transferred to and stored at a bonded warehouse and Consignor agrees to pay all transfer and storage charges.

11.     SETTLEMENT: Provided that Skinner has received full payment from the Purchaser of one or more Lots of Property, or has released such Lots of Property to the possession of the Purchaser, Skinner will pay the Consignor the net proceeds from the sale of such Property, less Commissions and other amounts due Skinner, on or before the thirty-fifth (35th) day after the auction sale at which such Lots were sold, or if such day is not a business day, on the next day on which Skinner's administrative offices are open for business. In the event of the Purchaser's failure to pay for the Property, Skinner in its discretion may (a) enforce payment by the Purchaser; (b) cancel the sale and reoffer the Property in a future auction; (c) cancel the sale and return the Property to the Consignor subject to reimbursement by the Consignor for transportation expenses. In addition to all of its other remedies for a breach of Consignor's warranties in paragraph 7, Skinner further reserves its right to cancel the sale if, in Skinner's judgment, the Purchaser has asserted a legitimate right of rescission based on a breach of warranty or based on the condition, quality, attribution, or authenticity of the Property. If Skinner has paid the Consignor any net proceeds from the sale of the Property prior to such cancellation, the Consignor agrees that the Consignor will reimburse Skinner for the full amount of the proceeds paid to Consignor.

12.     SECURITY; SETOFF: The Consignor hereby grants to Skinner a security interest in and lien upon the Property and all proceeds thereof to secure performance of all Consignor's obligations under this Agreement. Upon any breach of the Consignor's obligations under this Agreement, Skinner shall have all rights of a secured party under applicable law. Skinner may at any time apply or setoff any amounts due or payable from Skinner to the Consignor against any liabilities or other amounts due or to become due, now existing or hereafter arising, from the Consignor to Skinner.

13.     SUCCESSORS AND ASSIGNS: This Agreement shall be binding upon the Consignor's successors and assigns, including, without limitation, any executor or personal representative of the Consignor's estate, all of whom shall be subject to all of the provisions of this Agreement, including without limitation, the provisions of paragraph 8.

14.     GOVERNING LAW; JURISDICTION: The Agreement shall be governed by the laws of the Commonwealth of Massachusetts (excluding the laws applicable to conflicts or choice of law). The Consignor agrees that any suit for the enforcement of this Agreement may be brought, and any action against Skinner in connection with the transactions contemplated by this Agreement shall be brought, in the courts of the Commonwealth of Massachusetts or any federal court sitting therein. The Consignor consents to the nonexclusive jurisdiction of such courts and waives objection that it may now or hereafter have to the venue of any such suit.

# CONTINUATION SHEET

CONSIGNOR'S NAME  Carthaginian financial Corp.    RECEIPT NO. 100640

| ITEM NO. | TYPE OF SALE | DESCRIPTION | EST. RANGE |
|---|---|---|---|
| 4 | P2 | Cupid and Psyche (for research) | 4000 / 6000 |
| 5 | PA | marine portrait of Pacific Steamer with historical artifacts | 6000 / 8000 |
| 6 | P2 | Falcon Hunt (for research) | 4000 / 6000 |
| 7 | PA | Early print of Detroit | 800 / 1200 |
| 8 | PE | 3 prints of battle scenes | 400 / 600 |
| 9 | FD | Federal glazed butler's secretary signed Richard Allison, top of different origin | 1000 / 1500 |
| 10 | PE | Print of Rhododendron | 100 / 150 |
| 11 | D | painted wall shelf; probably Southern Europe | 300 / 500 |
| 12 | PE | Colored engraving "Spirit Creek" | 200 / 250 |
| 13 |  | Chippendale slant-lid carved desk Dunlop School | 2000 / 3000 |
| 14 |  | 1806 silk needlework picture | 400 / 600 |
| 15 |  | William and Mary style upholstered armchair | 300 / 500 |
| 16 | D | Andrew Johnson Indian Peace Medal | 300 / 500 |
| 17 | D | 3 cast iron toys: lighthouse, office building, safe | 600 / 800 |
| 18 |  | William and Mary red-painted chest of drawers (replaced feet) | 1000 / 1500 |
| 19 |  | Chippendale carved and gilded dressing table (restored) | 1500 / 2500 |
| 20 | D | Federal square-back mahogany sofa | 800 / 1200 |
| 21 |  | Chippendale mahogany fall front desk | 1500 / 2500 |
| 22 |  | Two tiger maple chairs | 400 / 600 |
| 23 |  | N.H. upholstered easy chair | 800 / 1200 |

ORIGINAL

*8-25-04*

A TRUE COPY ATTEST

*[signature]*

DEPUTY SHERIFF *950 AM*

**STATE OF VERMONT**
**COUNTY OF WINDHAM, SS.**

Plaintiff
*Carthaginian Financial ~~& Co~~ Corp*
vs.
*P.O. 1672 Biddeford, Maine*
Defendant
*04005*
*Skinner Inc.*
*357 Main St*
*Bolton, Mass. 01740*

SUMMONS

|  |
| --- |
| ) |
| ) |
| ) |
| ) |
| ) |
| ) |
| ) |
| ) |

**WINDHAM SUPERIOR COURT**
**CIVIL ACTION**

DOCKET NO.

*TO BE ASSIGNED*

To the above-named Defendant:

You are hereby summoned and required to serve upon *Skinner Inc* Plaintiff/Plaintiff's Attorney, whose address is *357 Main St Bolton, Mass 01740*, an Answer to the Complaint which is herewith served upon you, within TWENTY (20) DAYS after service of this Summons upon you, exclusive of the date of service. If you fail to do so, judgment by default can be taken against you for the relief demanded in the Complaint. YOUR ANSWER MUST ALSO BE FILED WITH THE COURT. Unless otherwise provided in V.R.C.P. 13(a), your Answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other actin. YOUR ANSWER MUST STATE SUCH A COUNTERCLAIM WHETHER OR NOT THE RELIEF DEMANDED IN THE COMPLAINT IS FOR DAMAGE COVERED BY A LIABILITY INSURANCE POLICY UNDER WHICH THE INSURER HAS THE RIGHT OR OBLIGATION TO CONDUCT THE DEFENSE.

Date *July 22, 2004*

*Alexandra G. Clark*
~~Clerk~~/Deputy Clerk

Served on _____
(date)

Sheriff/Deputy Sheriff

*$ 35*
*20 5 #*



Page

① 

(Total 8 Pages)

# Windam (Vt) Superior Court
## Rt # 30 : Newfane, Vermont

22 July '04
_____
Date

## Lawsuit: (R.I.C.O) Triple Damage
## Racketeering + Consiracy to DeFraud.

### Plantiff:

CARTHAGINIAN FINANCIAL CORP.
DONALD FLYNN, PRESIDENT

P.O. Box # 1672
Biddeford, Maine
04005

### Defendants:

INC



**SKINNER**
*Auctioneers and Appraisers of Antiques and Fine Art*

The Heritage On The Garden, 63 Park Plaza, Boston, MA 02116 Tel: 617.350.5400  Fax: 617.350.5429
357 Main Street, Bolton, MA 01740 Tel: 978.779.6241 Fax: 978.779.5144
www.skinnerinc.com

**Board of Directors**

President - Nancy Skinner
Richard Albright
Barnet Fain
Stephen L. Fletcher
Karen M. Keane

FILED    22-7104

JUL 2 ...

Windnam County
CLERKS OFFICE

**Administration**

① Chief Executive Officer - Karen M. Keane
Chief Financial Officer - Janet Sansaguida
② Executive Vice President - Stephen L. Fletcher
Vice Presidents- Colleene Fesko, Gloria Lieberman, Carol McCaffrey,
③ Stuart G. Slavid, Stuart P. Whitehurst

Cont. on Pg # 2



Page 2

Defendants: (Continued)

## Expert Departments

American & European Paintings - *Colleene Fesko;*
*Assistants: Robin S.R. Starr, Anne E. Poling*

American Furniture & Decorative Arts - *Stephen L. Fletcher, Martha Hamilton;*
*Assistant: Sheila Barron Smithie*

American Indian Art & Ethnographica - *Douglas Deihl*

Art Glass & Art Pottery - *Jane D. Prentiss;*
*Assistants: Megan Staats, Karen Langberg*

Arts & Crafts & The Modern Movement - *Jane D. Prentiss;*
*Assistants: Megan Staats, Karen Langberg*

Asian Works of Art - *James F. Callahan*

Books & Manuscripts - *Stuart P. Whitehurst*

Bottles, Flasks & Early Glass - *Stephen L. Fletcher*

Ceramics - *Stuart G. Slavid*

Discovery Sales - *Kerry Shrives;*
*Assistants: Nina Cohen, Lori Arnold, Diane Soule, Garrett Sheahan*

Dolls - *Dorothy McGonagle*

English & Continental Furniture & Decorative Arts - *Stuart G. Slavid;*
*Assistants: Stuart P. Whitehurst, Sara C. Wishart*

Jewelry - *Gloria Lieberman;*
*Assistant: Elizabeth Y. Turner, Kate M. Brizius, Sheila Barron Smithie*

Judaica - *Kerry Shrives*

Museum & Collections Service - *Martha Hamilton*

Musical Instruments - *David Bonsey;*
*Assistant: Lori E. Nevins*

Oriental Rugs & Carpets - *Jo Kris;*
*Assistant: Gary Richard*

Science & Technology - *George Glastris*

Silver - *Stuart G. Slavid;*
*Assistant: J. Scott Logan*

Toys & Collectables - *George Glastris*

Trusts & Estates - *Elizabeth D. Coxe*

Auctioneers - *Stephen L. Fletcher, George Glastris, Karen M. Keane, Gloria Lieberman, Kerry Shrives, Stuart G. Slavid, Robin S.R. Starr, Stuart P. Whitehurst*

**SKINNER, INC.**
*Auctioneers and*
*Appraisers of Antiques*
*and Fine Art*

The Heritage On The Garden
63 Park Plaza
Boston, MA 02116
617-350-5400
Fax 617-350-5429

357 Main Street
Bolton, MA 01740
978-779-6241
Fax 978-779-5144

www.skinnerinc.com

FILED
'JUL 2-2-2004
Windham County
CLERKS OFFICE



Page 3

Complaints:

From Day 1 (Arrival) of "Fesso" (Paintings) and "Fletcher" (Early American Furniture) to view potential consignment, and describe them; to the for catogue, to subsequent pick-up by Skinner at my Residence at 17 Rockingham Street in Bellows Falls, Vt; Defendants did everything in their power to miscatague; To lower the auction value I would receive.

(A) Never was a piece of American furniture ever potographed or offered in Primary Sale. Everything ended up in "Discovery" Junk Sales

FILED

AUG 17 2004

Windham County
CLERK OFFICE



Page 4

Example:

① A fine and rare Dunlap desk on frame (worth $60-80,000) was cataloged by Fletcher "Birch Chippendale" Slant Front Desk. I faxed half a dozen top Dealers, and a "Pool of Dealers bought it for $5000; then the dealers had a "Knock out" auction in the parking Lot. It went home to Woodbury, Conn with Dealer Wayne Pratt and he sold it for $80,000+ at Ian East Side Antiques Show in NYC in Jan. '03

② Three of my Old Master Painting were put in an "Mish-Mash" Auction of "Continal Furniture and Decorative Arts." No pictures or mention of my old master painting we made and a "Titan" and "Bassano" sold for 5% of their value. This was the work of Fletche & Fusco.

A third painting did not sell and turned out to an original Portrait of King Charles II of Englan, by Court Painter Sir Peter Levey.

FILED
Windham County
CLERKS OFFICE

Page ⑤

Exhibits Ⓐ Ⓑ Ⓒ Ⓓ

Copies of my contacts with Skinner
At this time they speak for them
-selve.

Summary:
I never cashed the check for the
Charles II Painting for that would
have indicated I approved the
Sale. It is worth 5-10 Million
and I expect Skinner to re-
acquire it and return it to me,
with 30 calendar days.
Consexvately, they have damaged
me 10 million $

Under RICO Federal L

I seek 30 million. $

FILED
JUL 22 2004
Windham County
CLERKS OFFICE

Cartlqianion
Financial
Corp

X Donald F Flynn

Donald F. Flynn

Skinner    (B)

(A)    To: Colleene Fosko.    1-Nov-02    ExA

Skinner Inc.    1-(978)# 779-5644

① Pull all my old Master Paintings
From (Nov 5 4 Sale) There
Has Been Zero Advertizing.

② They were estimated in the
Thousends

③ It is a gross breach of
Trust & Contract.

④ Forward This to Boston A.S.A.P.

I am unable to
get your
Boston
FAX to vll.08R

Carthaginian
Fin. Corp.

FILED
JUL 27 2004

Windham County
CLERKS OFFICE

# SKINNER INC. ③ EYB

(1-(617)) #350-5429

EYB To: C.E.O. Karen M. Keane.

Mon 18 Nov
3:30 AM

① You also have a painting of the
English King Charles II (unrestored)
that failed to sell 2-Nov-02.

② Put it in the same protective
custody as "Napoleon" and we
will offer it to the British
Royal Family!

③ Take good pictures and prepare
to submit them to the British
Ambassador in D.C.

④ I hold you responsable from
this day forward.

1-(470) #779-5144

FILED
JUL 2? 2004    Carthagian Fin. Corp

Windham County
CLERKS OFFICE

④



Continued — Illegal Activies

I instructed Skinner about my distaste and scorn for their activities And it was mutually agreed to sell noting more of my goods.

The Charles II ~~two a~~ ³/₄ portrait was a companion to one the Collection of the Royal Family in Great Britan.

* Two month later Fesco and Fletcher dumped the Chares II Portrait, in Junk "Discover Auction and I told the C.EO Karen Keene No, Donot Sell.

They sold it, after I said No.

FILED
AUG 2 2 2005
Windham County
CLERKS OFFICE

Skinner C.E.O.: 4

1803 Jun Jan5

C.F. Corp. Bellows Falls:

Ex D

① Your obligation to Consignor; is to present consigned items, property catalog catalogued, and described, in Specialized First Class Auctions.

② Of the 17th, 18th, & 19th century, furniture, etc American which was inspected in my Home by Fletcher; ALL were dumped in your Discovery Auctions. They should have been in your Amer. Fur. Auction in Boston.

③ Three of my "Old Master Paintings" were put into General "Contintental Furniture + Decorative Arts" Paintings were not even mentioned. 2 sold, one English King-Charles II did not. This was deliberat actions by Fletcher and Fesco.

④ I am trying to pick-up in Bolton, my Napoleon painting which Fesco requested since they were unable to document it.

⑤ Also cast iron Lighthouse, which I withdrew, because Fletcher was advised, like ones sold for $4000 and proposed to sell for 2-300$

JUL 2 2 2004
Cuyahoga County
CLERK'S OFFICE

⑥ I have a Lawyer working for me on a Real Estate matter in Vt. who is liscensed to practice in Vt. & Mass. A Lawsuit will be filed vs SKINNER in Fed. Ct. in Vt. since crimes took place in both states. Fed court covers both states.

⑧ I need a person to contact in Bolton to pick up with drawn items

⑦ You silence is pathetic.

# SKINNER

RECEIPT No. **100640**

(✓) IF, PREVIOUS ☐   ADDRESS CHANGE ☐
CONSIGNOR

PAYMENT TO _Carthaginian Financial Corp._
_17 Rockingham Street_
_Bellows Falls, VT 05101_

OLD ADDRESS

CORRESPONDENCE ☒
APPOINTMENT ☒
APPRAISAL DAY ☐
HOUSECALL ☐
WALK-IN ☐

TELEPHONE DAY _____
EVENING _____
DATE _____
CALL INITIATED BY _SLF_ FOR
BOLTON ☒        BOSTON ☐

SPECIAL INSTR _____

(PICK-UP ADDRESS)

TRANSPORTATION PAID BY CONSIGNOR
TRANSP. STAFF _EJ / BE_   HRS _2_   DATE P/UP _7/10/0A_

| ITEM NO. | TYPE OF SALE | DESCRIPTION | ESTIMATE RANGE |
|---|---|---|---|
| 1 | EC | Painting of Noblemen | 2000 4000 |
| 2 | EC | Painting of Noblemen (manner of Titian) | 1500 3000 |
| 3 | EC | Painting of Noblemen | 1800 2200 |

1.   **CONSIGNMENT:** The Consignor hereby consigns to Skinner, Inc. ("Skinner") the Property ("Property") identified above and in any additional receipt referencing this Agreement, authorizes Skinner, as Consignor's agent, to offer such Property for sale at public auction and agrees to the following terms and conditions.

2.   **COMMISSION:** Skinner will receive and retain as its commission from the proceeds of the sale (a) an amount equal to the greater of (i) 20 percent of the final bid and (ii) $30, on each Lot sold for less than $2,000, (b) an amount equal to 15 percent of the final bid on each Lot sold for $2,000 or more, but less than $7,500, and (c) an amount equal to 10 percent of the final bid on each Lot sold for $7,500 or more. In addition, Skinner will collect from the Purchaser of the Property ("Purchaser") an amount equal to the greater of (i) 17½ percent of the final price up to and including $80,000 plus 10 percent of the final bid over $80,000 and (ii) Skinner's buyer's premium prevailing at the time of sale, as stated in the conditions of sale governing the sale.

3.   **INSURANCE:** Skinner shall maintain insurance on the Property while the Property is in Skinner's possession in an amount equal to Skinner's average pre-sale high and low Property estimate (the "net insurable value"). In consideration of Skinner's maintenance of insurance on the Property, the Consignor agrees to pay to Skinner an amount equal to 1 percent of the final bid on each Lot sold. Such amount will be payable to Skinner upon the sale of the Property and will be withheld by Skinner from the net proceeds of sale payable to the Consignor under paragraph 11. In the event that some or all of the Property remains unsold after its initially scheduled sale date or if some or all of the Property is never scheduled for sale, the Consignor agrees to pay to Skinner an amount equal to 1 percent of the net insurable value on demand by Skinner. The Consignor hereby confirms and agrees that in the event of damage to or theft or loss of the Property, Skinner's liability shall in no event exceed net insurable value. Skinner shall in no event be liable or responsible for any damage to gessoed frames, nor shall Skinner be responsible for maintaining any special storage conditions for any Property.

**THIS AGREEMENT IS SUBJECT TO THE ADDITIONAL TERMS AND CONDITIONS CONTAINED ON THE REVERSE SIDE HEREOF.**

DATED: _25 June 2002_

_Carthaginian Fin. Corp P Flynn  Pres_   _Stephen Fletcher_
CONSIGNOR SIGNATURE                          SKINNER, INC. REPRESENTATIVE

The Heritage On The Garden
63 Park Plaza, Boston, MA 02116
617.350.5400
Fax: 617.350.5429

SKINNER, INC.
Auctioneers and
Appraisers of Antiques
and Fine Art

CONSIGNOR

357 Main Street
Bolton, MA 01740
978.779.6241
Fax: 978.779.5144

# CONTINUATION SHEET

CONSIGNOR'S NAME  Carthaginian Financial Corp.    RECEIPT NO. 100640

| RECO FIN | ITEM NO. | TYPE OF SALE | | LOCATION NO. | DESCRIPTION | WHSE | PRIN | UNIT | EST. RANGE | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 4 | P2 | | | Cupid and Psyche (for research) | | | | 4000 6000 | |
| | 5 | PA | | | marine portrait of Pacific Steamer with historical artifacts | | | | 6000 8000 | |
| | 6 | P2 | | | Falcon Hunt (for research) | | | | 4000 6000 | |
| | 7 | PA | | | Early print of Detroit | | | | 800 1200 | |
| | 8 | PE | | | 3 prints of battle scenes | | | | 400 600 | |
| | 9 | FD | | | Federal glazed butler's secretary signed Richard Allison, top of different origin | | | | 1000 1500 | |
| | 10 | PE | | | Print of Rhododendron | | | | 100 150 | |
| | 11 | D | | | painted wall shelf; probably Southern Europe | | | | 300 500 | |
| | 12 | PE | | | Colored engraving "Spirit Creek" | | | | 200 250 | |
| | 13 | | | | Chippendale slant lid carved desk Dunlop School | | | | 2000 3000 | |
| | 14 | | | | 1806 silk needlework picture | | | | 400 600 | |
| | 15 | | | | William and Mary style upholstered armchair | | | | 300 500 | |
| | 16 | D | | | Andrew Johnson Indian Peace Medal | | | | 300 500 | |
| | 17 | D | | | 3 cast iron toys: lighthouse, office building, safe | | | | 600 800 | |
| | 18 | | | | William and Mary red-painted chest of drawers (replaced feet) | | | | 1000 1500 | |
| | 19 | | | | Chippendale carved and gilded dressing table (restored) | | | | 1500 2500 | |
| | 20 | D | | | Federal square-back mahogany sofa | | | | 800 1200 | |
| | 21 | | | | Chippendale mahogany fall front desk | | | | 1500 2500 | |
| | 22 | | | | Two tiger maple chairs | | | | 400 600 | |
| | 23 | | | | N.H. upholstered easy chair | | | | 800 1200 | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

# Inventory Listing and Status Report

08/25/200   Page   1

| Stock Number | Cust No. | Description | Estimate and Reserve | Sale and Result | Status and Location | Entry Date and Time |
|---|---|---|---|---|---|---|
| 1006391<br>PEC Paintings English/Cont | 503770 | Painting of Napoleon-Research - ASK AEP | $5,000 -10,000<br>0 | /<br>$0.00 | ARO Awaiting Return to Consignor  NRS<br>Bolton | 07/16/2002<br>12:27 PM |
| 100640/1<br>PEC Paintings English/Cont | 503770 | Manner of Francesco Giambattista da Ponte | $2,000 -4,000<br>0 | 2162/169<br>$2,300.00 | RTB Released to Buyer  718<br>Off Premises | 07/09/2002<br>04:43 PM |
| 100640/2<br>PEC Paintings English/Cont | 503770 | Manner of Titian (Italian, 1477-1576) Portrait | $1,500 -3,000<br>0 | 2162/270<br>$2,800.00 | RTB Released to Buyer  718<br>Off Premises | 07/09/2002<br>04:43 PM |
| 100640/3<br>PDS Paintings Discovery | 503770 | British School, 17th Century Style Portrait of | $1,000 -1,500<br>0 | 2178/1170<br>$500.00 | RTB Released to Buyer  UNDER J<br>Off Premises | 07/09/2002<br>04:44 PM |
| 100640/4<br>NON No Department Assigned | 503770 | Manner of Titian (Italian, 1477-1576), Cupid | $4,000 -6,000<br>0 | /<br>$0.00 | ARO Awaiting Return to Consignor  P H4<br>Bolton | 07/09/2002<br>04:45 PM |
| 100640/5<br>PAM Paintings American | 503770 | Marine portrait of Pacific Steamer w/ | $6,000 -8,000<br>0 | /<br>$0.00 | ARO Awaiting Return to Consignor  P X48<br>Bolton | 07/09/2002<br>04:45 PM |
| 100640/6<br>NON No Department Assigned | 503770 | Manner of Meindlrt Hobbema (Dutch, | $4,000 -6,000<br>0 | /<br>$0.00 | ARO Awaiting Return to Consignor  P C10<br>Bolton | 07/09/2002<br>04:46 PM |
| 100640/7<br>PAM Paintings American | 503770 | The Cavert Lithography Co. (Detroit, 19th | $800 -1,200<br>0 | 2195/934<br>@NS | ARO Awaiting Return to Consignor  P S1<br>Bolton | 07/09/2002<br>04:46 PM |
| 100640/8<br>PDS Paintings Discovery | 503770 | Lot of Three Civil War Prints Including: Battle | $400 -600<br>0 | 2159/639<br>$425.00 | RTB Released to Buyer  P N1<br>Off Premises | 07/09/2002<br>04:46 PM |
| 100640/9<br>FDS Discovery Furniture | 503770 | Federal Glazed Mahogany and Mahogany | $1,000 -1,500<br>0 | 2167/843<br>$550.00 | RTB Released to Buyer  INCOM<br>Off Premises | 07/09/2002<br>04:47 PM |
| 100640/10<br>PDS Paintings Discovery | 503770 | The Pontic Rhododendron. Reproduction | $100 -150<br>0 | 2155/411<br>$50.00 | RTB Released to Buyer  P C13<br>Off Premises | 07/09/2002<br>04:47 PM |
| 100640/11<br>DSM Discovery Smalls | 503770 | Continental Painted Wooden Wall Spoon | $300 -500<br>0 | 2157/273<br>$275.00 | RTB Released to Buyer  INCOM<br>Off Premises | 07/09/2002<br>04:47 PM |
| 100640/12<br>PDS Paintings Discovery | 503770 | J. Shaw (British, 19th Century) Spirit Creek; | $200 -250<br>0 | 2155/418<br>$325.00 | RTB Released to Buyer  P C12<br>Off Premises | 07/09/2002<br>04:48 PM |
| 100640/13<br>FDS Discovery Furniture | 503770 | Chippendale Carved Birch Slant Lid Desk. | $2,000 -3,000<br>0 | 2169/329<br>$5,500.00 | RTB Released to Buyer  INCOM<br>Off Premises | 07/09/2002<br>04:49 PM |
| 100640/14<br>ASM Americana Smalls | 503770 | Silk Needlework and Watercolor Picture, | $400 -600<br>0 | 2195/1053<br>$400.00 | RTB Released to Buyer  307D<br>Off Premises | 07/09/2002<br>04:49 PM |
| 100640/15<br>FDS Discovery Furniture | 503770 | William and Mary Style Upholstered Maple | $300 -500<br>0 | 2167/972<br>$150.00 | RTB Released to Buyer  INCOM<br>Off Premises | 07/09/2002<br>04:50 PM |
| 100640/16<br>COL Collectibles/Ephemera | 503770 | (MIL) Andrew Johnson Indian Peace Medal | $300 -500<br>0 | /<br>$0.00 | ARO Awaiting Return to Consignor  D B8<br>Bolton | 07/09/2002<br>04:51 PM |
| 100640/17<br>DSM Discovery Smalls | 503770 | Cast Iron Building and Safe Banks and a | $800 -800<br>0 | 2163/<br>@WD | ARO Awaiting Return to Consignor  C top<br>Bolton | 07/09/2002<br>04:54 PM |

08/25/200   Page   2

# Inventory Listing and Status Report

| Stock Number | Cust No. | Description | Estimate and Reserve | Sale and Result | Status and Location | | Entry Date and Time |
|---|---|---|---|---|---|---|---|
| 10064018 | 503770 | William and Mary Red Painted Chest of | $1,000 -1,500 | 2157/971 | RTB Released to Buyer | | 07/09/2002 |
| FDS Discovery Furniture | | | 0 | $550.00 | Off Premises | INCOM | 04:55 PM |
| 10064019 | 503770 | Chippendale Carved and Gilt Mahogany | $1,500 -2,500 | 2157/836 | RTB Released to Buyer | | 07/09/2002 |
| FDS Discovery Furniture | | | 0 | $2,200.00 | Off Premises | INCOM | 04:56 PM |
| 10064020 | 503770 | Federal Square-back Upholstered Mahogany | $800 -1,200 | 2157/343 | RTB Released to Buyer | | 07/09/2002 |
| FDS Discovery Furniture | | | 0 | $600.00 | Off Premises | ogf | 04:57 PM |
| 10064021 | 503770 | Chippendale Mahogany Slant-lid Desk. | $1,500 -2,500 | 2157/837 | RTB Released to Buyer | | 07/09/2002 |
| FDS Discovery Furniture | | | 0 | $1,100.00 | Off Premises | INCOM | 04:57 PM |
| 10064022 | 503770 | Classical Tiger Caned Maple Armchair and | $200 -300 | 2163/663 | RTB Released to Buyer | | 07/09/2002 |
| FDS Discovery Furniture | | | 0 | $100.00 | Off Premises | cafe | 04:57 PM |
| 10064023 | 503770 | New Hampshire Upholstered Easy Chair with | $400 -500 | 2163/643 | RTB Released to Buyer | | 07/09/2002 |
| FDS Discovery Furniture | | | 0 | $425.00 | Off Premises | cafe | 04:58 PM |

Total Estimate:   $35,300 -56,700     Total Sold:     $18,350.00

Total Reserve:                    $0

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

CARTHAGINIAN                     )
FINANCIAL CORPORATION,           )
                    Plaintiff    )
                                 )
        v.                       )          Docket No. 2:05-CV-3
                                 )
SKINNER, INC.,                   )
                    Defendant    )

AFFIDAVIT OF JANET SANTAGUIDA

Janet Santaguida, being first duly sworn, deposes and states as follows:

1.      I am the chief operating officer and a duly authorized agent of Skinner, Inc. ("Skinner"), the Defendant in this matter.

2.      I am personally familiar with the facts in the above-captioned matter and I make this affidavit based upon my personal knowledge.

3.      Skinner maintains its corporate offices in Bolton, Massachusetts. It also maintains a gallery, and a smaller set of offices, in Boston, Massachusetts. All of its auctions, including those involving the Property which is the subject of this litigation, occur in one of these two locations.

4.      All of Skinner's corporate records, including the file that relates to the claims in this action, are maintained in Bolton, Massachusetts.

5.     The Napoleon painting, which is the subject of Plaintiff's replevin claim (and which Skinner has asked Mr. Flynn to retrieve from its offices, see Exhibits 1 and 2), is located in Skinner's Bolton offices, together with several other objects that he has never picked up.

6.     Skinner maintains no offices, and has no corporate presence, in Vermont.

7.     I believe that Mr. Flynn, Plaintiff's representative, may reside in Maine, since the correspondence Skinner has received from him has been mailed from Biddeford, Maine.

8.     In addition to me, Skinner intends to call the following witnesses, all of whom live in Massachusetts, and to the extent Skinner can locate them, Skinner may call other former Skinner employees whom we believe are located in Massachusetts:

   a.     Karen Keane: Karen is Skinner's chief executive officer. Mr. Flynn contacted her on several occasions. Ms. Keane would testify as to Skinner's policies and procedures relating to its various auctions, including those that are held in the Boston gallery and the "discovery" sales that are held at the Bolton location.

   b.     Stephen Fletcher: Stephen is an executive vice-president and one of the owners of Skinner. He went to Vermont to view the Property that is the subject of this action, and would testify about that event and his dealings with Mr. Flynn.

   c.     Colleene Fesko: Colleene is the head of Skinner's paintings department. She went with Stephen to view the Property, and would testify about that event and her dealings with Mr. Flynn.

-2-

d.    Eric Jones:  Eric works in our transportation department and would testify about picking up the Property from Vermont and his dealings with Mr. Flynn.

e.    Brian Eichmuller:  Brian used to work in Skinner's transportation department, but is no longer employed by Skinner.  He would testify about picking up the Property from Vermont and his dealings with Mr. Flynn.

f.    Joshua Langberg:    Joshua used to work in our inventory department and would testify about Skinner's attempts to return the Property to Mr. Flynn.

_Janet Santaguida_
Janet Santaguida

Sworn to before me this
11th day of ___March___, 2005.

_Laurie McGuire_
Notary Public

LAURIE M. MCGUIRE
Notary Public
Commonwealth of Massachusetts
My Commission Expires Aug 11, 2011

-3-

# CARTHAGINIAN FINANCIAL CORPORATION

## Corporation Information

| | | | |
|---|---|---|---|
| Status: | Active | File Date: | 12/24/1992 |
| Type: | NRS78 - Domestic Corporation | Corp Number: | C14259-1992 |
| Qualifying State: | NV | List of Officers Due: | 12/31/2005 |
| Managed By: | | Expiration Date: | |
| Foreign Name: | | On Admin Hold: | False |

## Resident Agent Information

| | | | |
|---|---|---|---|
| Name: | DONALD F. FLYNN | Address 1: | 316 CALIFORNIA AVE |
| Address 2: | #1005 | City: | RENO |
| State: | NV | Zip: | 89509 |
| Phone: | | Fax: | |
| Email: | | Mailing Address 1: | |
| Mailing Address 2: | | Mailing City: | |
| Mailing State: | | Mailing Zip: | |

## Financial Information

| | | | |
|---|---|---|---|
| No Par Share Count: | 0 | Capital Amount: | $ 100,000.00 |
| Par Share Count: | 100,000.00 | Par Share Value: | $ 1.00 |

## Officers                                    ☐ Include Inactive Officers

**President - DON FLYNN**

| | | | |
|---|---|---|---|
| Address 1: | 316 CALIFORNIA AVE STE 1005 | Address 2: | |
| City: | RENO | State: | NV |
| Zip: | 89509 | Country: | |
| Status: | Active | Email: | |

**Secretary - DON FLYNN**

| | | | |
|---|---|---|---|
| Address 1: | 316 CALIFORNIA AVE STE 1005 | Address 2: | |
| City: | RENO | State: | NV |
| Zip: | 89509 | Country: | |
| Status: | Active | Email: | |

**Treasurer - DON FLYNN**

| | | | |
|---|---|---|---|
| Address 1: | 316 CALIFORNIA AVE STE 1005 | Address 2: | |
| City: | RENO | State: | NV |
| Zip: | 89509 | Country: | |
| Status: | Active | Email: | |

## Actions\Amendments

| | | | |
|---|---|---|---|
| Action Type: | Articles of Incorporation | | |
| Document Number: | C14259-1992-001 | # of Pages: | 10 |
| File Date: | 12/24/1992 | Effective Date: | |
| (No Notes for this action) | | | |
| Action Type: | Amendment | | |
| Document Number: | C14259-1992-003 | # of Pages: | 1 |
| File Date: | 05/05/1994 | Effective Date: | |
| REINSTATED-REVOKE 11-01-93 S H | | | |
| Action Type: | Amendment | | |
| Document Number: | C14259-1992-004 | # of Pages: | 1 |

Case 1:05-cv-11802-DPW     Document 1-10     Filed 08/31/2005     Page 2 of 2

| File Date: | 07/01/1994 | Effective Date: | |
|---|---|---|---|
| REINSTATEMENT CANCELLED...$265 CHECK RETURNED BY BANK UNPAID TCH | | | |
| Action Type: | Resident Agent Change | | |
| Document Number: | C14259-1992-005 | # of Pages: | 1 |
| File Date: | 07/05/1995 | Effective Date: | |
| EDWARD R. FITZSIMMONS ALH | | | |
| 316 CALIFORNIA AVE #1108 RENO NV 89509 ALH | | | |
| Action Type: | Amendment | | |
| Document Number: | C14259-1992-006 | # of Pages: | 1 |
| File Date: | 07/05/1995 | Effective Date: | |
| REINSTATED - REVOKED 9/1/93 ALH | | | |
| Action Type: | Resident Agent Change | | |
| Document Number: | C14259-1992-007 | # of Pages: | 1 |
| File Date: | 08/09/1995 | Effective Date: | |
| EDWARD R. FITZSIMMONS ALH | | | |
| 812 EAST WILLIAMS ST. #3982 CARSON CITY NV 89701 ALH | | | |
| Action Type: | Amendment | | |
| Document Number: | C14259-1992-008 | # of Pages: | 1 |
| File Date: | 09/23/1996 | Effective Date: | |
| REINSTATED-REVOKED 09-01-96 SRH | | | |
| Action Type: | Resident Agent Change | | |
| Document Number: | C14259-1992-009 | # of Pages: | 1 |
| File Date: | 07/02/1997 | Effective Date: | |
| EDWARD R. FITZSIMMONS | | | |
| 316 CALIFORNIA AVE. #1108 RENO NV 89509 TCH | | | |
| Action Type: | Amendment | | |
| Document Number: | C14259-1992-010 | # of Pages: | 1 |
| File Date: | 04/01/1999 | Effective Date: | |
| REINSTATED-REVOKED 9-1-98 EJF | | | |
| Action Type: | Annual List | | |
| Document Number: | C14259-1992-002 | # of Pages: | 1 |
| File Date: | 12/20/2004 | Effective Date: | |
| List of Officers for 2004 to 2005 | | | |



# VERMONT SECRETARY OF STATE
## *Deborah L. Markowitz*

| ARCHIVES | CORPORATIONS | ELECTIONS | OTHER PROGRAMS | PROFESSIONAL REGULATIONS | SECRE |

### CARTHAGINIAN not found!

Information Contact

**Home | Site Search | Help**
**Vermont State Page | Contact | Disclaimer**

**This Web Page is** 

# SKINNER

**SKINNER, INC.**
*Auctioneers and*
*Appraisers of Antiques*
*and Fine Art*

The Heritage On The Garden
63 Park Plaza
Boston, MA 02116
Tel  617.350.5400
Fax  617.350.5429

357 Main Street
Bolton, MA 01740
Tel  978.779.6241
Fax  978.779.5144

www.skinnerinc.com

DATE: 16 Jan 03 _____     TIME: _____

TO: _____

LOCATION: _____

PHONE: _____

FAX: _____

FROM: Josh _____

LOCATION: **Skinner/BOLTON**

**TOTAL NUMBER OF PAGES INCLUDING COVER SHEET:** _____

Dear Sir — In regard to your fax
Please pick up the items we have
available for you in Bolton. Please get
in contact with me to avoid intreft
and Storage fees. In the mean time I
will do my best to resolve the
Charles II issue.
                    Thank you
                    Josh

# SKINNER

**SKINNER, INC.**
*Auctioneers and*
*Appraisers of Antiques*
*and Fine Art*

The Heritage On The Garden
63 Park Plaza
Boston, MA 02116
Tel 617.350.5400
Fax 617.350.5429

357 Main Street
Bolton, MA 01740
Tel 978.779.6241
Fax 978.779.5144

www.skinnerinc.com

DATE: 23 Jan 03 _____     TIME: _____

TO: _Dear Sir_____

LOCATION: _____

PHONE: _____

FAX: _____

FROM: _Josh_____

LOCATION:  **Skinner/BOLTON**

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET: _1._____

Dear Sir - We are anxious for you to retrieve your property. Any idea when we can expect you? We are here Mon - Fri. 9-5. We are also available to help you pack your car. Please contact us with a date of arrival so we are able to have your items ready.

Sincerely,
Josh

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2005 MAR 16 AM 8 40

CLERK

BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| CARTHAGINIAN FINANCIAL CORPORATION, Plaintiff | ) ) ) ) | |
| v. | ) ) | Docket No. 2:05-CV-3 |
| SKINNER, INC., Defendant | ) ) ) | |

## AFFIDAVIT OF JANET SANTAGUIDA

Janet Santaguida, being first duly sworn, deposes and states as follows:

1.      I am the chief operating officer and a duly authorized agent of Skinner, Inc. ("Skinner"), the Defendant in this matter.

2.      I am personally familiar with the facts in the above-captioned matter and I make this affidavit based upon my personal knowledge.

3.      Skinner maintains its corporate offices in Bolton, Massachusetts.  It also maintains a gallery, and a smaller set of offices, in Boston, Massachusetts.  All of its auctions, including those involving the Property which is the subject of this litigation, occur in one of these two locations.

4.      All of Skinner's corporate records, including the file that relates to the claims in this action, are maintained in Bolton, Massachusetts.

5.     The Napoleon painting, which is the subject of Plaintiff's replevin claim (and which Skinner has asked Mr. Flynn to retrieve from its offices, see Exhibits 1 and 2), is located in Skinner's Bolton offices, together with several other objects that he has never picked up.

6.     Skinner maintains no offices, and has no corporate presence, in Vermont.

7.     I believe that Mr. Flynn, Plaintiff's representative, may reside in Maine, since the correspondence Skinner has received from him has been mailed from Biddeford, Maine.

8.     In addition to me, Skinner intends to call the following witnesses, all of whom live in Massachusetts, and to the extent Skinner can locate them, Skinner may call other former Skinner employees whom we believe are located in Massachusetts:

a.     Karen Keane:  Karen is Skinner's chief executive officer.  Mr. Flynn contacted her on several occasions.  Ms. Keane would testify as to Skinner's policies and procedures relating to its various auctions, including those that are held in the Boston gallery and the "discovery" sales that are held at the Bolton location.

b.     Stephen Fletcher: Stephen is an executive vice-president and one of the owners of Skinner. He went to Vermont to view the Property that is the subject of this action, and would testify about that event and his dealings with Mr. Flynn.

c.     Colleene Fesko:  Colleene is the head of Skinner's paintings department. She went with Stephen to view the Property, and would testify about that event and her dealings with Mr. Flynn.

d.    Eric Jones:  Eric works in our transportation department and would testify about picking up the Property from Vermont and his dealings with Mr. Flynn.

e.    Brian Eichmuller:  Brian used to work in Skinner's transportation department, but is no longer employed by Skinner.  He would testify about picking up the Property from Vermont and his dealings with Mr. Flynn.

f.    Joshua Langberg:    Joshua used to work in our inventory department and would testify about Skinner's attempts to return the Property to Mr. Flynn.

_____
Janet Santaguida

Sworn to before me this
11th day of ___March___, 2005.

_____
Notary Public

LAURIE M. MCGUIRE
Notary Public
Commonwealth of Massachusetts
My Commission Expires Aug 11, 2011

-3-

# SKINNER

**SKINNER, INC.**
*Auctioneers and*
*Appraisers of Antiques*
*and Fine Art*

The Heritage On The Garden
63 Park Plaza
Boston, MA 02116
Tel  617.350.5400
Fax 617.350.5429

357 Main Street
Bolton, MA 01740
Tel  978.779.6241
Fax 978.779.5144

www.skinnerinc.com

DATE: 16 Jan 03 _____    TIME: _____

TO: _____

LOCATION: _____

PHONE: _____

FAX: _____

FROM: Josh _____

LOCATION: **Skinner/BOLTON**

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET: _____

Dear Sir - In regard to your fax
Please pick up the items we have
available for you in Bolton. Please get
in contact with me to avoid intreft
and Storage fees. In the mean time I
will do my best to resolve the
Charles II issue.

Thank you
Josh

2

100639

# SKINNER

**SKINNER, INC.**
*Auctioneers and*
*Appraisers of Antiques*
*and Fine Art*

**The Heritage On The Garden**
63 Park Plaza
Boston, MA 02116
Tel 617.350.5400
Fax 617.350.5429

357 Main Street
Bolton, MA 01740
Tel 978.779.6241
Fax 978.779.5144

www.skinnerinc.com

DATE: 23 Jan 03 _____    TIME: _____

TO: Dear Sir _____

LOCATION: _____

PHONE: _____

FAX: _____

FROM: Josh _____

LOCATION: **Skinner/BOLTON**

**TOTAL NUMBER OF PAGES INCLUDING COVER SHEET:** 1.

Dear Sir - We are anxious for you to retrieve your property. Any idea when we can expect you? We are here Mon - Fri. 9-5. We are also available to help you pack your car. Please contact us with a date of arrivals so we are able to have your items ready.

Sincerely,

Josh

UNITED STATES DISTRICT COURT

FOR THE

STATE OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2005 MAR 29 AM 8 36

CLERK
BY _____
DEPUTY CLERK

| | |
|---|---|
| CARTHAGINIAN<br>FINANCIAL CORPORATION<br>       Plaintiff | )<br>)<br>)<br>) |
| v. | ) Docket Number 2:05-CV-3<br>) |
| SKINNER, INC.<br>       Defendant | )<br>)<br>) |

## RESPONSE TO DISMISS UNDER FED. R.CIV.P.12(B)(6) OR (B)(3) OR TRANSFER VENUE TO THE DISTRICT OF MASSACUSETTS

TO THE HONORABLE, THE JUDGES OF THE ABOVE COURT:

On this, the 28th day of March, 2005, comes the Plaintiff, Carthaginian Financial, before this Honorable Court and avers as follows:

Defendant Skinner has submitted a Motion with incorporated Memorandum to have the case Plaintiff, Carthaginian Financial, dismissed. The Memorandum is in error in the areas of law raised, and the attendant Motion should be dismissed. The arguments raised shall be addressed as follows in the Plaintiff's own Memorandum of Law:

## FACTUAL AND PROCEDURAL SUMMARY.

The factual course of events described by the Defendant in its Motion is essentially correct with the following exceptions taken by the Plaintiff Corporation:

1. Plaintiff admits no knowledge of any communication by Defendant Skinner to the Plaintiff requesting that he pick up unsold items, as alleged on the first Paragraph of Page 3.

2.  As of the second paragraph of Page 4 of the Motion, the Defendant is no longer stating a factual basis, but engaging in arguments.  Therefore the Plaintiff makes no admission to facts alleged beyond this point.

## ARGUMENT

I.  PLAINTIFF'S COMPLAINT HAS CLEARLY STATED A CLAIM FOR RECOVERY.

### A.  Standard of Review

The Defendant is correct when it states that the Court must accept as true all well-pleaded allegations in the Complaint.  While the Court does not have to accept the Plaintiff's characterization of the legal status of Defendant's acts, it is obligated to make all reasonable inferences that flow from them in the light most favorable to it, the party opposing summary judgment. Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003).

### B.  Plaintiff Has Stated a Claim for Breach of Contract.

Defendant argues in its Motion that Skinner's duties for Carthaginian were defined by the Agreement signed by parties.  Such is generally consistent with Plaintiff Carthaginian's claim of action.  The Contract imposes upon the Defendant the duty to sell the goods submitted by the Plaintiff in a way that is consistent with good auctioneer trade practices.  However, to claim, as Defendant does, that "Skinner had no obligation to sell items for 'the highest possible bid,'" at least within its powers and experience as an auction house, beggars belief.    The Contract, in provision 1.  "Consignments," states that the Consignor (e.g. Carthaginian) hereby consigns to Skinner Inc. ("Skinner") the Property ("Property") identified above and in any additional receipt referencing this Agreement, authorizes Skinner to offer such Property for sale at public auction and agrees to the following terms and conditions." In not offering the property for sale in a manner that was far from the most efficacious, Plaintiff asserts that Defendant breached its duty under this contract.

The Defendant in its argument is splitting hairs and defining its duties as an auctioneer too narrowly and literally.  As the Defendant itself quotes from Baybank Middlesex v. 1200 Beacon Properties, Inc. 760 F. Supp. 957, 963 (D.Mass 1991): "a

contract must also be interpreted as a whole and effect must be given to all its provisions in order to effectuate its overall purpose." Not every duty attendant to any services need be listed under a contract such as the one Skinner signed with the Plaintiff Carthaginian, but the rights and duties of auctioneers be delineated by this kind of expansive reading of an auctioneers' duties, not just to the consigners but others; Godin v. Shechtman, 82 R.I. 375 _____A.2d_____ (1954); Nelson Anderson Inc. v. McManus 334 Mass. 394 (1956).    This distinguishes from cases such as Defendant-quoted Carey v. Malley 327 Mass. 189, 193, 97 N.E.2d 645, 1997, which described a duty alleged by a Plaintiff (clearing snow from areas exterior of a building) which could be argued were not necessarily attendant with the central duty of the contractor in that case, ie., rental of housing. The Seventh Circuit case of Kohler v. Hindman at 80 F.3d 1181, 1185 (7th Cir. 1996) is also illustrative here. Hindman of the case was an auction house who was given a commission under a contract to sell a painting which was believed to be much more valuable than it turned out to be. Later, upon finding the painting a forgery, the auction house allowed a rescission of the sale under a provision in the contract and returned the money to the buyer rather than the original owners.    The Seventh Circuit Court found that auctioneer Hindman had under the contract an implied power as an independent agent to cancel the sale in order to preserve the auction house's reputation that overrode its literal contractual duty to the Plaintiffs, the Kohlers, to sell their painting.

While Skinner may arguably have had the right to place items in a subsequent auction *after* it had fulfilled its contractual duty to display and sell it for the highest return, without a response from buyers, it did not have the right to place it in the lower-return track when it had clearly failed in its duty to properly assess the items, advertise and schedule them for the maximum purchaser bidding and higher return for the consignor beforehand.

In the alternative, if this Honorable Court finds that Plaintiff has failed to state a claim for a breach of contract, Plaintiff Carthaginian requests leave to amend the present pleadings.

C. Plaintiff Has Stated a Viable Claim for Replevin.

Defendant claims that they are not unlawfully retaining a painting of Napoleon I as they offered a return of the painting to Plaintiff, to no avail. However, the only evidence that the work were so offered to be returned is a claimed fax to an unknown number that the Plaintiff has no memory of receiving, and an Affidavit by one of Skinner's employees, Janet Santaguida. Upon receiving Defendant's motion ten days prior to the filing of this Memorandum, Plaintiff's attorney has indicated to Plaintiff that Defendants would allow him to pick up the painting on his behalf; and awaits an answer. In lieu of a confirmation that the painting is indeed recoverable, Plaintiff notes that acceptance of well-pleaded facts as true would indicate that the painting continues to be held by the Defendants, and therefore the Replevin claim should not be barred.

D. Plaintiff's Claims Are Not Barred by the Doctrine of Res Judicata.

Defendant has made a claim that Standefer v. United States at 447 U.S. 10 (1980) is relevant in this case; however, the Court should note that Standefer was attendant to a criminal matter, rather than a civil matter dealing with claims that involve contractual duty. Likewise, the case of Day v. Moscow (995 F.2d 807, 811; 2nd Cir.) that Defendant cites is distinguishable. That case was an attempt of a criminally-accused Defendant to seek redress against a New York District Attorney. There was no claim of a duty of the District Attorney to the Plaintiff.

Flaherty v. Lang at 199 F.3rd 607, 612 (2d Cir 1999) is selectively quoted; and indeed, Plaintiff will use it in primarily reliance. The Third Circuit rejected the Defendant's res judicata claim in Flaherty, noting that the first case filed by the Plaintiff was, like the first case in the present matter, was filed pro se. Flaherty goes on to comment:

> While it is true that those claims arise out of the same set of operative facts as the due process claim that we have concluded was fully and fairly litigated and actually determined, we are unwilling in these muddled circumstances to impose "the drastic remedy of foreclosing a party from litigating an essential issue." McNellis, 364 F.2d at 257. **Our reluctance to foreclose Flaherty from litigating his retaliation claims rests on the circumstances of the instant case, and in part on Flaherty's pro se status.** (Emphasis added).

The assumed unfamiliarity with law that attends pro se status is also reflected in the more generous rules toward a plaintiff when considering summary judgement motions, as noted in <u>Weinstein v. Albright,</u> 261 F.3d 127, 137 (2d Cir. 2001) :

> When considering motions to dismiss the claims of plaintiffs proceeding pro se, courts in this Circuit are instructed to construe the pleadings liberally. See, e.g., Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir. 1999)...When parties move for summary judgment against pro se litigants, this court has required that the movant or the district court provide notice to the pro se party which includes a short and plain statement that all assertions of material fact in the movant's affidavits will be taken as true by the district court unless the pro se litigant contradicts those factual assertions in one or more affidavits made on personal knowledge containing facts that would be admissible in evidence or by submitting other materials as provided in Rule 56(e). <u>Ibid</u>, at 130.

Any barred re-litigation that Defendants claim here with Carthaginian II would have to presume competent litigation in Carthaginian I. Plaintiff, now guided by counsel, argues that such competence was missing as because Carthaginian's representative, Donald Flynn, filed the previous case pro se and not with the advise of an attorney.   <u>Flaherty</u> would seem to require that the present case be retained for a proper and equitable adjudication of the merits.

This Court, in its decision of December 7th, 2004, stated on Page 3 that "A simple claim of for breach of contract, without more, does not rise to the level of fraud so as to create a 'racketeering activity,' <u>Mills v. Polar Molecular Corp.</u>  12 F.3d 1170, 1176 (2nd Cir. 1993)."   In other words, it stated that a breech of contract could exist without racketeering-type fraud taking place.  Having examined the assertions from the much more demanding standard of the RICO statue should not bar the Court from examining the Defendants' actions from the lesser standard of whether or not there was a breach of contractual duties.

II.    <u>PLAINTIFF IS ENTITLED TO HEAR CLAIM IN THE CURRENT VENUE.</u>

Well-established law, quoted by the Defendant, states that considerable weight should be given to a Plaintiff's choice of form. The Plaintiff's representative in this matter, Donald Flynn, is aged. He has considerable familiarity with Vermont, and is unable to travel comfortably into large cities. The contract was freely entered into by Skinner in Vermont, obliviating Defendant's quote of <u>Cali v. East Coast Aviation Services</u>, 178 F.Supp 2d 276, 292 (2001): "the plaintiff's chosen forum has no material connection to the facts." Skinner has greater resources to travel, and therefore the Court should give the deciding weight to Carthaginian's choice of forum.

III.    <u>DEFENDANT'S ASSERTION THAT ALTERNATIVELY, THE CASE SHOULD BE TRANSFERRED TO UNITED STATES DISTRICT COURT FOR MASSACHUSETTS -- NO RESPONSE NECESSARY.</u>

<u>CONCLUSION.</u>

Plaintiff, Carthaginian Corporation requests that this Honorable Court dismiss the Defendant's Motion and permit the matter to go before this Court for adjudication on the merits. In the alternative, if this Honorable Court finds that Plaintiff has failed to state a claim for a breach of contract, Plaintiff Carthaginian requests leave to amend the present pleadings.

Dated: 28 March 2005                         By the Plaintiff,
      St. Albans, Vermont

                                     Thomas Niksa, Esq.
                                     92 S. Main Street 1B
                                     St. Albans, VT 05478
                                     District Court Atty.
                                     ID No. 00766520
                                     (802) 527-1010

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2005 APR 13  AM 8 27

CLERK
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

| | |
|---|---|
| CARTHAGINIAN | ) |
| FINANCIAL CORPORATION, | ) |
|         Plaintiff | ) |
| | ) |
|    v. | )   Docket No.  2:05-CV-3 |
| | ) |
| SKINNER, INC., | ) |
|         Defendant | ) |

### DEFENDANT SKINNER, INC.'S REPLY TO
### PLAINTIFF'S RESPONSE TO MOTION TO DISMISS UNDER
### FED. R. CIV. P. 12(b)(6) OR 12(b)(3) OR TRANSFER VENUE TO THE
### DISTRICT OF MASSACHUSETTS AND INCORPORATED MEMORANDUM OF LAW

Defendant, Skinner, Inc. ("Skinner"), by and through its attorneys, Gravel and Shea,

submits the following Memorandum of Law in reply to Plaintiff's Response to its Motion to

Dismiss.

### MEMORANDUM

In its Complaint, Plaintiff Carthaginian Financial Corporation ("Carthaginian") alleges

that Skinner breached its consignment agreement (the "Agreement") with Carthaginian by

miscataloguing and devaluing its consigned items ("the Property") so that they would allegedly

return less at auction (even though Skinner's own economic interests were to maximize the

return on any Property sold at auction), and that Skinner was unlawfully retaining a painting of

Napoleon that belonged to Plaintiff.  Skinner moved to dismiss the Complaint, for several

reasons: (i) Plaintiff failed to state a claim for breach of contract or replevin; (ii) Plaintiff was barred from bringing these claims based on the doctrine of res judicata; and (iii) the case was improperly brought in Vermont and should be dismissed for improper venue or transferred to the District of Massachusetts.

In response to Skinner's Motion, Carthaginian agrees that Skinner's duties were defined by the Agreement, but argues that Skinner also had an over-arching, implied duty to sell the Property at the highest possible bid, so as to ensure a high return. Carthaginian Response, at 2-3. The parties' Agreement, however, and Plaintiff's principal case for its argument reveal that Skinner had no such obligation and therefore Plaintiff's breach of contract claim fails as a matter of law. Carthaginian also states that it was unaware that Skinner has been waiting for Mr. Flynn to return and pick up his unsold Napoleon painting, which Skinner has been storing for him for almost three years. In any event, based upon Plaintiff's Response, that claim is now moot.

Contrary to Plaintiff's argument, res judicata also bars Carthaginian from pursuing this case a second time, even where it was not represented by an attorney in *Carthaginian I*. The Second Circuit has repeatedly applied res judicata principles to pro se litigants, as this Court should do here. Finally, Carthaginian argues, without evidentiary support, that this case should remain in the District of Vermont because its representative is aged and not comfortable traveling to large cities.

For the reasons that follow, Plaintiff's claims still fail as a matter of law.

I.    PLAINTIFF HAS FAILED TO STATE A CLAIM THAT SKINNER BREACHED ANY
      CONTRACTUAL DUTIES.

Carthaginian admits that Skinner's duties to it were defined by the Agreement, but goes

on to state that these duties included an implied obligation to sell the goods submitted by

Plaintiff in a way "that is consistent with good auctioneer trade practices," apparently meaning an

obligation to sell the Property for the highest possible bid, in order to get the highest possible

return for the Plaintiff.  Carthaginian Response, at 2.  In support of this argument, Plaintiff points

to paragraph 1 of the Agreement, which reads as follows:  "The Consignor hereby consigns to

Skinner, Inc. ("Skinner") the Property ("Property") identified above and in any additional receipt

referencing this Agreement, authorizes Skinner, as Consignor's agent, to offer such Property for

sale at public auction and agrees to the following terms and conditions."  Agreement, ¶ 1.

Because the agency relationship between the parties had been limited and defined by the

Agreement, however, Plaintiff's argument cannot stand.

While it is true that an agent is obligated to act in a fiduciary capacity on behalf of its

principal, "[e]qually relevant is the principle that the terms of an agency relationship may be

modified by contract."  *Greenwood v. Koven*, 880 F. Supp. 186, 194 (S.D.N.Y. 1995); *see also*

Restatement (Second) of Agency § 387 (1958) ("*Unless otherwise agreed*, an agent is subject to

a duty to his principal to act solely for the benefit of the principal in all matters connected with

his agency" (emphasis added)).  In this case, the unambiguous terms of the Agreement

specifically defined and narrowed the scope of Skinner's obligations to Carthaginian:  it allowed

Skinner the discretion to place the Property into saleable lots, to determine the pre-sale high and

low estimate of the Property, and to reject a bid on the Property that it considered too low and

place items in a subsequent sale at a reduced estimated price.[1] The plain language of the

Agreement belies and completely contradicts Carthaginian's argument that Skinner had the

obligation to get the best possible price for the Property in order to get the highest return for

Plaintiff.

The principle case cited by Plaintiff is instructive on this point.  In *Kohler v. Leslie*

*Hindman, Inc.*, the plaintiffs, consignors of a painting, brought a breach of contract and

constructive fraud claim against an auction house and the highest bidder on the painting after the

bidder discovered the painting was not authentic and rescinded the sale.  80 F.3d 1181 (7th Cir.

1996).  The plaintiffs argued that the auction house breached the consignment agreement and its

fiduciary obligations, because the rescission of the sale was not in their best interests.  The Court

noted that the consignment agreement defined the terms of the relationship between the

consignors and the auction house, stating that: "[A]ll of the Kohlers' claims depend on how the

consignment agreement defined the scope of Hindman, Inc.'s authority as the Kohlers' agent.  If

Hindman, Inc. acted at all times within its authority, the Kohlers cannot prevail on any of their

---

[1] Paragraph 4 of the Agreement states that: "The time, place, manner and all conditions of sale, including the division of the Property into saleable lots, shall be determined solely by Skinner." Agreement, ¶ 4.  The Agreement also authorized Skinner to determine the pre-sale high and low estimate of the Property, and states that it "reserves the right to revise any such estimate." *Id.* ¶ 5.

The Agreement goes on to state that:
Skinner reserves the right, but undertakes no obligation, to reject the opening bid of the Property if such bid is deemed by Skinner, in its sole discretion, to be unacceptably low. In the event that the Property remains unsold, Skinner may at its option (a) reoffer the Property at a reduced pre-sale estimate at a subsequent public sale to the highest bidder, or (b) return the unsold Property to the Consignor at the Consignor's expense.

*Id.* ¶ 9.

claims. Defining the scope of that authority requires an interpretation of the consignment agreement." *Id.* at 1185.

The Court went on to find that the consignment agreement authorized the auction house to rescind a sale when the company, "in its sole discretion," determined that either it or the consignors were subject to liability under a warranty of authenticity. *Id.* at 1186. Since the consignment agreement gave the auction house the authority to rescind the sale of the painting, defendant breached no duty and the Kohlers' claims for breach of contract failed as a matter of law. *Id.* at 1188.

Likewise, in this case, Carthaginian gave Skinner the sole authority to decide how the Property would be valued, how it would be distributed into lots and sold, and what would occur if the Property did not sell or if a bid was too low. Although Skinner's economic interests were clearly aligned with Plaintiff's and a sale at the highest bid would have benefitted both parties, the plain language of the Agreement contradicts Plaintiff's argument that Skinner had some overarching obligation to get the highest possible return as a matter of contractual duty, and therefore its claim for breach of contract must fail as a matter of law. *See Greenwood v. Koven*, 880 F. Supp. 186, 203 (S.D.N.Y. 1995) ("The Consignment Agreement in this case clearly addressed the dispute between the parties. Though [plaintiff] is understandably dissatisfied with the rescission of the sale, [plaintiff] read and understood the Consignment Agreement and is bound by its terms").

II.    PLAINTIFF'S CLAIM FOR REPLEVIN IS MOOT.

Under the terms of the Agreement, Skinner is obligated to maintain insurance on

consignors' property that it has in its possession.  Agreement, ¶ 3.  Moreover, Skinner has to

store that property, and incurs costs related thereto.  *Id.* ¶ 10.[2]  As a result, Skinner plainly has no

interest in holding on to Plaintiff's painting.  Moreover, Plaintiff cannot claim that the painting is

being "unlawfully retained," since Plaintiff admits that it is now aware that Skinner is ready and

willing to turn the painting over to Mr. Flynn as soon as possible.

Plaintiff's claim for replevin is moot, and should be dismissed.


III.   PLAINTIFF'S PRO SE STATUS DOES NOT PREVENT ITS CURRENT CLAIMS
       FROM BEING BARRED BY THE DOCTRINE OF RES JUDICATA.

Plaintiff argues that, because it filed *Carthaginian I* without the assistance of an attorney,

this Court is "required" to retain the instant case and to hear it on the merits.  Carthaginian

Response, at 5.  It also asserts that the instant case can only be dismissed if there was "competent

litigation" in *Carthaginian I.  Id.*  Both statements are incorrect – this Court has not hesitated to

dismiss cases filed by pro se plaintiffs on res judicata grounds.  *See, e.g., Moss v. E. on AG*, 2004

WL 2940811 (2d Cir. 2004) (affirming this Court's dismissal of case filed by pro se plaintiff

based on res judicata grounds); *Austin v. Downs, Rachlin & Martin*, 2004 WL 2476474 (2d Cir.

2004) (same, on collateral estoppel grounds); *Austin v. Hanover Ins. Co.*, 2001 WL 799188 (2d

Cir. 2001) (affirming dismissal of fraud claims on res judicata grounds); and *Zingher v. Vermont*

---

[2] While the Agreement allows Skinner to charge insurance and/or storage fees to consignors, Skinner has not made any effort to collect these charges from Carthaginian or from Mr. Flynn.  *See* Exhibits 1 and 2, attached to Ms. Santaguida's Affidavit.

*Div. of Vocational Rehabilitation*, 165 F.3d 1015 (2d Cir. 1999) (affirming dismissal of constitutional claims not advanced in prior litigation on res judicata grounds, where same evidence would be used to support second set of claims as had supported previously-dismissed litigation). Regardless of the fact that Plaintiff was not represented by an attorney in *Carthaginian I*, this Court can, and should, relieve Skinner and the Court from repetitious litigation.

For the reasons set forth in Skinner's Motion to Dismiss, Plaintiff's claims are barred by the doctrine of res judicata because they arise out of the same set of transactions and occurrences as *Carthaginian I*, and should be dismissed.

IV.    THIS CASE SHOULD BE DISMISSED FOR IMPROPER VENUE, OR
       TRANSFERRED TO THE DISTRICT OF MASSACHUSETTS.

In its Response, Plaintiff does not dispute the fact that the Agreement requires it to litigate this action in Massachusetts, nor has it met its burden to "make a strong showing to overcome" the presumption that contractual choice-of-forum provisions should be enforced. *Mastec Latin America v. Inepar S/A Industrias E Construcoes*, No. 03 Civ. 9892, 2004 WL 1574732, at *3 (S.D.N.Y. July 13, 2004). Moreover, it does not dispute any of the evidence presented by Skinner to support Skinner's argument that the relevant factors weigh heavily in favor of transferring the action to the District of Massachusetts. *See* Skinner's Motion to Dismiss, at 14-18.[3] Instead, Plaintiff merely states, without any evidentiary support, that the case

---

[3] Notably, Carthaginian does not even address the fact that it is actually *prohibited from* maintaining this action in Vermont due to its failure to obtain a certificate of authority from the Secretary of State. 11B V.S.A. § 15.02(a).

should stay in Vermont because its corporate representative is "aged" and is "unable to travel comfortably in large cities." Carthaginian's Response, at 6. Because this statement lacks support, it should be disregarded. *See MK Systems, Inc. v. Schmidt*, No. 04 Civ. 8106 RWS, 2005 WL 590665, at *5 (S.D.N.Y. Mar. 10, 2005) ("Although [plaintiff] has argued that its 'customers are primarily located in New York,' no evidence has been submitted to that effect," so factor weighs in favor of transfer). Indeed, this statement is contradicted by Skinner's undisputed evidence that Mr. Flynn, Carthaginian's representative, is a resident of either Maine or Nevada, and would himself have to travel, regardless of where this case was located. Finally, Plaintiff's statement that "Skinner has greater resources to travel" also lacks evidentiary support. Instead, this case is at most one between two corporate entities.

Since the parties agreed to litigate this case in Massachusetts and because the relevant witnesses and evidence are located in Massachusetts, Maine and/or Nevada, Skinner has met its burden to present clear and convincing evidence that this case should be dismissed for improper venue or transferred to the District of Massachusetts.

## CONCLUSION

For the reasons stated herein and in its Motion to Dismiss, Defendant Skinner, Inc. respectfully requests that this Court dismiss this case under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for breach of contract or replevin or on res judicata grounds, or under Fed. R. Civ.

P. 12(b)(3) for improper venue.  In the alternative, Skinner requests that this Court transfer venue

to the United States District Court for the District of Massachusetts.

Dated:        Burlington, Vermont
              April 12, 2005


                              _Heather Ride Hammond_
                              Heather Rider Hammond, Esq.
                              Gravel and Shea
                              76 St. Paul Street, 7th Floor
                              P. O. Box 369
                              Burlington, VT  05402-0369
                              (802) 658-0220
                              For Defendant

CERTIFICATE OF SERVICE

I, Heather Rider Hammond, Esq., attorney for Defendant, certify that on April 12, 2005, I

served Defendant's Skinner, Inc.'s Reply to Plaintiff's Response to Motion to Dismiss under

Fed. R. Civ. P. 12(b)(6) or 12(b)(3) or To Transfer Venue to the District Of Massachusetts and

Incorporated Memorandum of Law, on Thomas Niksa, Esq., by causing a copy to be mailed,

postage prepaid to him at 92 South Main Street, 1B, St. Albans, VT 05478.

Dated:        Burlington, Vermont
              April 12, 2005

Heather Rider Hammond, Esq.
Gravel and Shea
76 St. Paul Street, 7th Floor
P. O. Box 369
Burlington, VT 05402-0369
(802) 658-0220
For Defendant

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2005 APR 13  AM 8 27

CLERK
BY _____
DEPUTY CLERK

CARTHAGINIAN                        )
FINANCIAL CORPORATION,              )
        Plaintiff              )
                               )
   v.                          )      Docket No.  2:05-CV-3
                               )
SKINNER, INC.,                      )
        Defendant              )

DEFENDANT SKINNER, INC.'S REPLY TO
PLAINTIFF'S RESPONSE TO MOTION TO DISMISS UNDER
FED. R. CIV. P. 12(b)(6) OR 12(b)(3) OR TRANSFER VENUE TO THE
DISTRICT OF MASSACHUSETTS AND INCORPORATED MEMORANDUM OF LAW

Defendant, Skinner, Inc. ("Skinner"), by and through its attorneys, Gravel and Shea,

submits the following Memorandum of Law in reply to Plaintiff's Response to its Motion to

Dismiss.

MEMORANDUM

In its Complaint, Plaintiff Carthaginian Financial Corporation ("Carthaginian") alleges

that Skinner breached its consignment agreement (the "Agreement") with Carthaginian by

miscataloguing and devaluing its consigned items ("the Property") so that they would allegedly

return less at auction (even though Skinner's own economic interests were to maximize the

return on any Property sold at auction), and that Skinner was unlawfully retaining a painting of

Napoleon that belonged to Plaintiff.  Skinner moved to dismiss the Complaint, for several

reasons: (i) Plaintiff failed to state a claim for breach of contract or replevin; (ii) Plaintiff was barred from bringing these claims based on the doctrine of res judicata; and (iii) the case was improperly brought in Vermont and should be dismissed for improper venue or transferred to the District of Massachusetts.

In response to Skinner's Motion, Carthaginian agrees that Skinner's duties were defined by the Agreement, but argues that Skinner also had an over-arching, implied duty to sell the Property at the highest possible bid, so as to ensure a high return. Carthaginian Response, at 2-3. The parties' Agreement, however, and Plaintiff's principal case for its argument reveal that Skinner had no such obligation and therefore Plaintiff's breach of contract claim fails as a matter of law. Carthaginian also states that it was unaware that Skinner has been waiting for Mr. Flynn to return and pick up his unsold Napoleon painting, which Skinner has been storing for him for almost three years. In any event, based upon Plaintiff's Response, that claim is now moot.

Contrary to Plaintiff's argument, res judicata also bars Carthaginian from pursuing this case a second time, even where it was not represented by an attorney in *Carthaginian I*. The Second Circuit has repeatedly applied res judicata principles to pro se litigants, as this Court should do here. Finally, Carthaginian argues, without evidentiary support, that this case should remain in the District of Vermont because its representative is aged and not comfortable traveling to large cities.

For the reasons that follow, Plaintiff's claims still fail as a matter of law.

I.    PLAINTIFF HAS FAILED TO STATE A CLAIM THAT SKINNER BREACHED ANY
      CONTRACTUAL DUTIES.

Carthaginian admits that Skinner's duties to it were defined by the Agreement, but goes

on to state that these duties included an implied obligation to sell the goods submitted by

Plaintiff in a way "that is consistent with good auctioneer trade practices," apparently meaning an

obligation to sell the Property for the highest possible bid, in order to get the highest possible

return for the Plaintiff.  Carthaginian Response, at 2.  In support of this argument, Plaintiff points

to paragraph 1 of the Agreement, which reads as follows:  "The Consignor hereby consigns to

Skinner, Inc. ("Skinner") the Property ("Property") identified above and in any additional receipt

referencing this Agreement, authorizes Skinner, as Consignor's agent, to offer such Property for

sale at public auction and agrees to the following terms and conditions."  Agreement, ¶ 1.

Because the agency relationship between the parties had been limited and defined by the

Agreement, however, Plaintiff's argument cannot stand.

While it is true that an agent is obligated to act in a fiduciary capacity on behalf of its

principal, "[e]qually relevant is the principle that the terms of an agency relationship may be

modified by contract."  *Greenwood v. Koven*, 880 F. Supp. 186, 194 (S.D.N.Y. 1995); *see also*

Restatement (Second) of Agency § 387 (1958) ("*Unless otherwise agreed*, an agent is subject to

a duty to his principal to act solely for the benefit of the principal in all matters connected with

his agency" (emphasis added)).  In this case, the unambiguous terms of the Agreement

specifically defined and narrowed the scope of Skinner's obligations to Carthaginian:  it allowed

Skinner the discretion to place the Property into saleable lots, to determine the pre-sale high and

low estimate of the Property, and to reject a bid on the Property that it considered too low and

place items in a subsequent sale at a reduced estimated price.[1] The plain language of the

Agreement belies and completely contradicts Carthaginian's argument that Skinner had the

obligation to get the best possible price for the Property in order to get the highest return for

Plaintiff.

The principle case cited by Plaintiff is instructive on this point. In *Kohler v. Leslie*

*Hindman, Inc.*, the plaintiffs, consignors of a painting, brought a breach of contract and

constructive fraud claim against an auction house and the highest bidder on the painting after the

bidder discovered the painting was not authentic and rescinded the sale. 80 F.3d 1181 (7th Cir.

1996). The plaintiffs argued that the auction house breached the consignment agreement and its

fiduciary obligations, because the rescission of the sale was not in their best interests. The Court

noted that the consignment agreement defined the terms of the relationship between the

consignors and the auction house, stating that: "[A]ll of the Kohlers' claims depend on how the

consignment agreement defined the scope of Hindman, Inc.'s authority as the Kohlers' agent. If

Hindman, Inc. acted at all times within its authority, the Kohlers cannot prevail on any of their

---

[1] Paragraph 4 of the Agreement states that: "The time, place, manner and all conditions of sale, including the division of the Property into saleable lots, shall be determined solely by Skinner." Agreement, ¶ 4. The Agreement also authorized Skinner to determine the pre-sale high and low estimate of the Property, and states that it "reserves the right to revise any such estimate." *Id.* ¶ 5.
The Agreement goes on to state that:
Skinner reserves the right, but undertakes no obligation, to reject the opening bid of the Property if such bid is deemed by Skinner, in its sole discretion, to be unacceptably low. In the event that the Property remains unsold, Skinner may at its option (a) reoffer the Property at a reduced pre-sale estimate at a subsequent public sale to the highest bidder, or (b) return the unsold Property to the Consignor at the Consignor's expense.
*Id.* ¶ 9.

claims. Defining the scope of that authority requires an interpretation of the consignment agreement." *Id.* at 1185.

The Court went on to find that the consignment agreement authorized the auction house to rescind a sale when the company, "in its sole discretion," determined that either it or the consignors were subject to liability under a warranty of authenticity. *Id.* at 1186. Since the consignment agreement gave the auction house the authority to rescind the sale of the painting, defendant breached no duty and the Kohlers' claims for breach of contract failed as a matter of law. *Id.* at 1188.

Likewise, in this case, Carthaginian gave Skinner the sole authority to decide how the Property would be valued, how it would be distributed into lots and sold, and what would occur if the Property did not sell or if a bid was too low. Although Skinner's economic interests were clearly aligned with Plaintiff's and a sale at the highest bid would have benefitted both parties, the plain language of the Agreement contradicts Plaintiff's argument that Skinner had some overarching obligation to get the highest possible return as a matter of contractual duty, and therefore its claim for breach of contract must fail as a matter of law. *See Greenwood v. Koven*, 880 F. Supp. 186, 203 (S.D.N.Y. 1995) ("The Consignment Agreement in this case clearly addressed the dispute between the parties. Though [plaintiff] is understandably dissatisfied with the rescission of the sale, [plaintiff] read and understood the Consignment Agreement and is bound by its terms").

II.    PLAINTIFF'S CLAIM FOR REPLEVIN IS MOOT.

Under the terms of the Agreement, Skinner is obligated to maintain insurance on consignors' property that it has in its possession. Agreement, ¶ 3. Moreover, Skinner has to store that property, and incurs costs related thereto. *Id.* ¶ 10.[2] As a result, Skinner plainly has no interest in holding on to Plaintiff's painting. Moreover, Plaintiff cannot claim that the painting is being "unlawfully retained," since Plaintiff admits that it is now aware that Skinner is ready and willing to turn the painting over to Mr. Flynn as soon as possible.

Plaintiff's claim for replevin is moot, and should be dismissed.

III.    PLAINTIFF'S PRO SE STATUS DOES NOT PREVENT ITS CURRENT CLAIMS
FROM BEING BARRED BY THE DOCTRINE OF RES JUDICATA.

Plaintiff argues that, because it filed *Carthaginian I* without the assistance of an attorney, this Court is "required" to retain the instant case and to hear it on the merits. Carthaginian Response, at 5. It also asserts that the instant case can only be dismissed if there was "competent litigation" in *Carthaginian I. Id.* Both statements are incorrect – this Court has not hesitated to dismiss cases filed by pro se plaintiffs on res judicata grounds. *See, e.g., Moss v. E. on AG,* 2004 WL 2940811 (2d Cir. 2004) (affirming this Court's dismissal of case filed by pro se plaintiff based on res judicata grounds); *Austin v. Downs, Rachlin & Martin,* 2004 WL 2476474 (2d Cir. 2004) (same, on collateral estoppel grounds); *Austin v. Hanover Ins. Co.,* 2001 WL 799188 (2d Cir. 2001) (affirming dismissal of fraud claims on res judicata grounds); and *Zingher v. Vermont*

---

[2] While the Agreement allows Skinner to charge insurance and/or storage fees to consignors, Skinner has not made any effort to collect these charges from Carthaginian or from Mr. Flynn. *See* Exhibits 1 and 2, attached to Ms. Santaguida's Affidavit.

*Div. of Vocational Rehabilitation*, 165 F.3d 1015 (2d Cir. 1999) (affirming dismissal of constitutional claims not advanced in prior litigation on res judicata grounds, where same evidence would be used to support second set of claims as had supported previously-dismissed litigation). Regardless of the fact that Plaintiff was not represented by an attorney in *Carthaginian I*, this Court can, and should, relieve Skinner and the Court from repetitious litigation.

For the reasons set forth in Skinner's Motion to Dismiss, Plaintiff's claims are barred by the doctrine of res judicata because they arise out of the same set of transactions and occurrences as *Carthaginian I*, and should be dismissed.

IV.    THIS CASE SHOULD BE DISMISSED FOR IMPROPER VENUE, OR TRANSFERRED TO THE DISTRICT OF MASSACHUSETTS.

In its Response, Plaintiff does not dispute the fact that the Agreement requires it to litigate this action in Massachusetts, nor has it met its burden to "make a strong showing to overcome" the presumption that contractual choice-of-forum provisions should be enforced. *Mastec Latin America v. Inepar S/A Industrias E Construcoes*, No. 03 Civ. 9892, 2004 WL 1574732, at *3 (S.D.N.Y. July 13, 2004). Moreover, it does not dispute any of the evidence presented by Skinner to support Skinner's argument that the relevant factors weigh heavily in favor of transferring the action to the District of Massachusetts. *See* Skinner's Motion to Dismiss, at 14-18.[3] Instead, Plaintiff merely states, without any evidentiary support, that the case

---

[3] Notably, Carthaginian does not even address the fact that it is actually *prohibited from* maintaining this action in Vermont due to its failure to obtain a certificate of authority from the Secretary of State. 11B V.S.A. § 15.02(a).

should stay in Vermont because its corporate representative is "aged" and is "unable to travel comfortably in large cities." Carthaginian's Response, at 6. Because this statement lacks support, it should be disregarded. *See MK Systems, Inc. v. Schmidt*, No. 04 Civ. 8106 RWS, 2005 WL 590665, at *5 (S.D.N.Y. Mar. 10, 2005) ("Although [plaintiff] has argued that its 'customers are primarily located in New York,' no evidence has been submitted to that effect," so factor weighs in favor of transfer). Indeed, this statement is contradicted by Skinner's undisputed evidence that Mr. Flynn, Carthaginian's representative, is a resident of either Maine or Nevada, and would himself have to travel, regardless of where this case was located. Finally, Plaintiff's statement that "Skinner has greater resources to travel" also lacks evidentiary support. Instead, this case is at most one between two corporate entities.

Since the parties agreed to litigate this case in Massachusetts and because the relevant witnesses and evidence are located in Massachusetts, Maine and/or Nevada, Skinner has met its burden to present clear and convincing evidence that this case should be dismissed for improper venue or transferred to the District of Massachusetts.

## CONCLUSION

For the reasons stated herein and in its Motion to Dismiss, Defendant Skinner, Inc. respectfully requests that this Court dismiss this case under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for breach of contract or replevin or on res judicata grounds, or under Fed. R. Civ.

P. 12(b)(3) for improper venue.  In the alternative, Skinner requests that this Court transfer venue

to the United States District Court for the District of Massachusetts.

Dated:        Burlington, Vermont
              April 12, 2005


_Heather Rider Hammond_
Heather Rider Hammond, Esq.
Gravel and Shea
76 St. Paul Street, 7th Floor
P. O. Box 369
Burlington, VT  05402-0369
(802) 658-0220
For Defendant

CERTIFICATE OF SERVICE

I, Heather Rider Hammond, Esq., attorney for Defendant, certify that on April 12, 2005, I

served Defendant's Skinner, Inc.'s Reply to Plaintiff's Response to Motion to Dismiss under

Fed. R. Civ. P. 12(b)(6) or 12(b)(3) or To Transfer Venue to the District Of Massachusetts and

Incorporated Memorandum of Law, on Thomas Niksa, Esq., by causing a copy to be mailed,

postage prepaid to him at 92 South Main Street, 1B, St. Albans, VT  05478.

Dated:         Burlington, Vermont
               April 12, 2005

Heather Rider Hammond, Esq.
Gravel and Shea
76 St. Paul Street, 7th Floor
P. O. Box 369
Burlington, VT  05402-0369
(802) 658-0220
For Defendant

UNITED STATES DISTRICT COURT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

FOR THE

2005 MAY  2  AM 10 13

STATE OF VERMONT

CLERK

BY _____

DEPUTY CLERK

CARTHAGINIAN                    )
FINANCIAL CORPORATION           )
        Plaintiff              )
                                )
    v.                          )  Docket Number 2:05-CV-3
                                )
SKINNER, INC.                   )
        Defendant              )

### PLAINTIFF CARTHAGINIAN'S RESPONSE TO SKINNER, INC. REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS UNDER FED. R.CIV.P.12(B)(6) OR (B)(3) OR TRANSFER VENUE TO THE DISTRICT OF MASSACUSETTS

TO THE HONORABLE, THE JUDGES OF THE ABOVE COURT:

On this, the 30th day of April, 2005, comes the Plaintiff, Carthaginian Financial, before this Honorable Court and avers as follows:

Defendant Skinner ("Skinner") has submitted a Reply (hereafter referred to as 'Reply')  with incorporated Memorandum in further support of its Motion to have the case of Plaintiff, Carthaginian Financial ("Carthaginian,"), dismissed.   This additional Memorandum  is in error in the areas of law raised, does not properly account for the unique circumstances in this matter, and the attendant Motion should be dismissed.   The arguments raised shall be addressed as follows in the Plaintiff's own Memorandum of Law:

### MEMORANDUM.

Defendant Skinner argues that as an auction house for the sale of art items, they do not have a duty to maximize the return for their clients, or are always assumed to be acting in good faith – an obviously absurd assumption.   Plaintiff asserts that

Skinner was in breach of accepted auction business practices, failed to maximize the return for the Plaintiff corporation and therefore incurred a loss to it in terms of lost income. Defendant also argues that Plaintiff is barred from bringing claims due to the doctrine of res judicata because of 'Carthaginian I,' and makes the claim that the case should be moved to Massachusetts as the proper venue.

## ARGUMENT

### I. THE IDEA THAT DEFENDANT SKINNER HAD NO DUTY TO PLAINTIFF IS NONSENSICAL.

Defendant argues that there was no implied duty under the Agreement to sell the items for the highest possible bid in accordance with accepted auction practices. In the Reply, the party states; "While it is true that an agent is obligated to act in a fiduciary capacity on behalf of its principal, equally relevant is the principle that the terms of an agency relationship my be modified by contract (cites omitted)." To the extent that a revision of the duties took place under this consignment contract, it did not at any point obliviate the basic duty of Skinner to move the consigned articles for the highest possible price.

Defendant goes on to effectively argue that under the consignment agreement Skinner's discretion in this matter was absolute; that is, exercisable without answer to any established duty or practice of auctioneers. Such an argument would have the Court believe that there are no conceivable ways wherein a fiduciary could be so negligent as to show that such a claim of 'sole responsibility' could be cover for incurring a blatant loss to its clients. It is very possible that an auctioneer can subvert the interest of a client on behalf of third parties once the consignment items are given over and inspected; Plaintiff states such is the case here. To argue that Skinner had absolute and unfettered discretion, as the Defendant's attorney does here, is to completely overthrow the loyalty that is at the heart of the principal-agent relationship.

2d Circuit and Vermont auction law on point is admittedly scanty. This was noted in the case of <u>Kohler v. Leslie Hindman</u> at 80 F.3d 1181 (7th Cir 1996), cited by the Plaintiff in its prior Response in terms of setting duties that an auctioneer

would have toward a client. <u>Kohler</u> found no Illinois law on point, and in turn took from <u>Greenwood v. Koven</u>, 880 F. Supp. 186 (S.D.N.Y. 1995). Contrary to the Defendant's allegation, however, <u>Kohler</u> is distinguishable as well, and should be paralleled with caution. <u>Kohler</u>'s exercise of auctioneer discretion dealt with a rescission of a sale after the fall of the hammer - as opposed to the conduct of the sale itself, as in the matter at hand. No dispute of fact, as opposed to law, was present in the case, and no evidence outside of the contract itself was slated to be entered:

> Therefore, all of the Kohlers' claims against Hindman, Inc. must be resolved in accordance with Illinois law, as will the Kohlers' claim against Thune since it ultimately depends upon the interpretation of their contract with Hindman, Inc...Indeed, all of the Kohlers' claims depend upon how the consignment agreement defined the scope of Hindman, Inc.'s authority as the Kohlers' agent. If Hindman, Inc. acted at all times within its authority, the Kohlers cannot prevail on any of their claims. Defining the scope of that authority requires an interpretation of the consignment agreement. (Kohler, supra., at 1182)

In contrast, plaintiff in this case has plead fraud and wrongful conduct in the sale itself, involving third parties and has evidence to that effect that it would be stopped from presenting for proper evaluation by a fact finder should the Defendant's Motion be admitted. This allegation of third party involvement is a highly distinguishing factor that by itself demands that this case should go forward to discovery.

### Plaintiff's Claims Are Not Barred by the Doctrine of Res Judicata.

Defendant Skinner in its brief claims that Plaintiff, in its Response, claimed that a pro se case can never be thrown out by the courts on the grounds of res judicata. This is a misrepresentation of the Plaintiff's stance in the matter. Defendant has made a claim that the following: <u>Moss v E. on AG</u> 2004 WL 2940811 (2$^d$ Cir. 2004); Austin v. Downs Rachlin & Martin, 2004 WL 2476474; Austin v Hanover 2001 WL 799188; and Zingher v. Vermont 165 F.3d 1015 (2d Cir. 1999) are relevant in the matter, however none of the above duplicate the circumstances at hand, where a Plaintiff is refilling a faulty pro se action under the assistance of an

attorney.    Instead, the <u>Austin</u> and <u>Zingher</u> cases, at least, are re-litigations by plaintiffs that were previously pro se – and still are.

Plaintiff reiterates:  Any re-litigation that Defendants claim should be barred here with Carthaginian II would have to presume the same level of competency in Carthaginian I. Plaintiff, now guided by counsel, argues that such competence was missing as because Carthaginian's representative, Donald Flynn, filed the previous case pro se and not with the advise of an attorney.   Plaintiff continues his reliance on Flaherty v. Lang at 199 F.3rd 607, 612 (2nd Cir 1999) to require that the present case be retained for a proper and equitable adjudication of the merits.

## CONCLUSION.

For reasons stated here in and in its prior Response to Motion to Dismiss, the Plaintiff, Carthaginian Inc., has stated a viable cause of action, and should be allowed to proceed in the current venue.

Dated: 29 April 2005
      St. Albans, Vermont

By the Plaintiff,

Thomas Niksa, Esq.
92 S. Main Street  1B
St. Albans, VT  05478
District Court Atty.
ID No.  00766520
(802) 527-1010

# UNITED STATES DISTRICT COURT

## FOR THE

### STATE OF VERMONT

| | |
|---|---|
| CARTHAGINIAN<br>FINANCIAL CORPORATION<br>       Plaintiff | )<br>)<br>)<br>) |
| v. | ) Docket Number 2:05-CV-3 |
| SKINNER, INC.<br>       Defendant | )<br>)<br>)<br>) |

## CERTIFICATE OF SERVICE

I, Thomas Niksa, attorney for Plaintiff Carthaginian, hereby certify that I served a copy of the Response to Defendant Skinner's Reply to the Plaintiff's Response to the Motion to Dismiss; to Defendant's Counsel by mailing same to her office at P.O. Box 369, 76 St. Paul Street, Burlington, Vermont, by first class mail on April 30, 2005.

Thomas Niksa, Esq.
ID No. 00766520
92 S. Main Street B1
St. Albans, VT  05478
(802) 527-1010

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2005 MAY 6 AM 8 44

CLERK
BY _____
DEPUTY CLERK

CARTHAGINIAN                    )
FINANCIAL CORPORATION,          )
             Plaintiff          )
                        )
    v.                          )         Docket No. 2:05-CV-3
                        )
SKINNER, INC.,                  )
             Defendant          )

## DEFENDANT'S MOTION TO STRIKE
## AND INCORPORATED MEMORANDUM OF LAW

     Defendant, Skinner, Inc., by and through its attorneys, Gravel and Shea, hereby moves the

Court to strike and disregard Plaintiff's "Response to Skinner, Inc.'s Reply to Plaintiff's

Response to Motion to Dismiss," because it is a sur-reply unauthorized by this Court's local

rules. In support of its Motion, Defendant relies upon the following Memorandum of Law.

## MEMORANDUM OF LAW

     Plaintiff's April 29, 2005, filing is a sur-reply that is not contemplated by this Court's

local rules, and was not authorized by this Court. Moreover, there is no basis for this sur-reply,

since it is merely a rehashing of Plaintiff's arguments in opposition, and does not address any

new factual or legal issues.

GRAVEL AND SHEA
ATTORNEYS AT LAW
P. O. BOX 369
URLINGTON, VERMONT
05402-0369

Therefore, Defendant requests that the Court enter an order, striking Plaintiff's sur-reply memorandum from the pleadings in this case, and Defendant further requests that the Court disregard that memorandum in passing upon the pending motion.

Dated:    Burlington, Vermont
          May 5, 2005

*Heather Rider Hammond*

Heather Rider Hammond, Esq.
Gravel and Shea
76 St. Paul Street, 7th Floor
P. O. Box 369
Burlington, VT 05402-0369
(802) 658-0220
For Defendant

## CERTIFICATE OF SERVICE

I, Heather Rider Hammond, Esq., attorney for Defendant, certify that on May 5, 2005, I served Defendant's Motion to Strike and Incorporated Memorandum of Law, on Thomas Niksa, Esq., by causing a copy to be mailed, postage prepaid to him at 92 South Main Street, 1B, St. Albans, VT 05478.

Dated:    Burlington, Vermont
          May 5, 2005

_Heather Rider Hammond_
Heather Rider Hammond, Esq.
Gravel and Shea
76 St. Paul Street, 7th Floor
P. O. Box 369
Burlington, VT 05402-0369
(802) 658-0220
For Defendant

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Carthaginian Financial Corp.,    :
    Plaintiff,                   :
                                 :
                                 :
    v.                           : File No. 2:05-CV-3
                                 :
                                 :
Skinner, Inc.,                   :
    Defendant.                   :

## <u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

(Papers 1 & 8)

    Plaintiff Carthaginian Financial Corporation
("Carthaginian") brings this diversity action against
Skinner, Incorporated ("Skinner") for breach of contract
and replevin.  Specifically, Carthaginian claims that
Skinner breached its duty to obtain the highest possible
auction or sale price for artwork and antiques consigned to
Skinner by Carthaginian.  (Paper 1).  Additionally,
Carthaginian claims that Skinner has illegally retained
some of the consigned items.  Carthaginian seeks damages in
excess of $275,000.  (<u>Id.</u>).

    Skinner has filed a motion to dismiss for failure to
state a claim upon which relief can be granted.  (Paper 3).

Skinner also claims that Carthaginian's claims are barred by res judicata.  (<u>Id.</u>).  Alternatively, Skinner moves to either dismiss for improper venue, or to transfer venue to the District of Massachusetts.  (<u>Id.</u>).  Carthaginian has opposed Skinner's motion.  (<u>Id.</u>).

For the reasons set forth below, I recommend that Skinner's motion to dismiss under Rule 12(b)(6), Rule 12(b)(3) or res judicata be DENIED and that its motion to transfer venue to the United States District Court for the District of Massachusetts be GRANTED.

## <u>Procedural History</u>

In July 2004, Carthaginian, appearing pro se, filed a complaint against Skinner in Vermont state court. Carthaginian claimed that Skinner had engaged in racketeering and conspiracy to commit fraud, and it sought damages of $10 million under the Racketeer Influenced and Corrupt Organizations Act ("RICO").  18 U.S.C. §§ 1961-1968.  Carthaginian asserted that Skinner deliberately devalued the artwork and antiques it had consigned to Skinner for auction and sale.  Skinner removed the case to this Court in September 2004.  <u>Carthaginian Financial Corp. v. Skinner, Inc.</u>, 1:04-CV-236 (Vt. Dist. Ct. Dec. 7, 2004).

2

After removal, Skinner filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted pursuant to Fed. R. Civ. P. 12(b)(6).  In December 2004, this Court granted Skinner's motion to dismiss, finding that "[a] simple breach of contract, without more, does not rise to the level of fraud so as to create a 'racketeering activity.'" Id. at 3 (Murtha, J.). Carthaginian did not appeal or file for leave to amend the pleadings.

On January 6, 2005, Carthaginian, now represented by counsel, filed another complaint against Skinner.  (Paper 1).  Carthaginian raises claims against Skinner for breach of contract and replevin, arising out of the same transaction as the first complaint.  Carthaginian argues that Skinner breached its duty to sell Carthaginian's antiques and artwork at the highest possible price and instead sold them for greatly reduced amounts.

## Factual Background

In June 2002, Carthaginian placed artwork and antique furniture on consignment with Skinner.[1]  (Paper 3, Ex. A).

---

[1] Carthaginian has stipulated that Skinner's portrayal of the facts is correct except that it admits no knowledge of Skinner's requests for Carthaginian to pick up unsold items.

An agreement signed by Carthaginian and Skinner listed the individual pieces placed on consignment and also provided a pre-sale high and low estimated price range for each item. (Id.). The agreement states, in part: "[t]he time, place, and manner and all conditions of sale, including division of the Property into saleable lots, shall be determined solely by Skinner." (Id.). The agreement also contains a forum-selection clause. (Id.). The artwork allegedly included a painting of Charles II and a painting of Napoleon I. (Paper 1; Paper 3, Ex. A). The furniture items included a Chippendale-style Dunlop School desk. (Paper 1; Paper 3, Ex. A).

Skinner auctioned Carthaginian's property during the fall of 2002. (Paper 3). Several of Carthaginian's items remained unsold. (Id.). Carthaginian contends that Skinner retains the unsold items illegally. (Paper 1). Skinner maintains that it has attempted to contact Donald Flynn, Carthaginian's representative, on several occasions to arrange for him to pick up the remaining items. (Paper 3).

## Discussion

### Motion to Strike

As an initial matter, Carthaginian filed a sur-reply to Skinner's response to Carthaginian's opposition to the motion to dismiss. (Paper 7). Skinner has filed a motion to strike the sur-reply, arguing that such filings are not permitted by the local rules.

Under the local rules, a party may file an opposition to a motion, and the moving party may file a reply to the opposition. L.R. 7.1(a). A sur-reply is not generally permitted, and Carthaginian did not seek leave of the Court before filing the sur-reply. As such, Skinner's motion to strike will be granted. (Paper 8). The Court will not consider Carthaginian's sur-reply. (Paper 7).

### Failure to State a Claim

Skinner first argues that this action should be dismissed under Rule 12(b)(6) for failure to state a claim. Skinner argues that Carthaginian has failed to state a claim for either breach of contract or replevin, and as such, the complaint must be dismissed.

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must read

the complaint with generosity. See Bolt Electric, Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995). Taking the plaintiff's allegations as true, the court must construe the complaint in the light most favorable to the plaintiff, and must draw all inferences in plaintiff's favor. See Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989). The complaint must not be dismissed unless "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Equal Employment Opportunity Comm'n v. Staten Island Savings Bank, 207 F.3d 144, 148 (2d Cir. 2000) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Indeed, there is an important difference between disposing of a case on a 12(b)(6) motion and resolving the case later in the proceedings, for example by summary judgment. See Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998). In a 12(b)(6) motion, "the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." Id. (citations and internal quotation marks omitted).

Skinner argues that Carthaginian cannot make a claim for breach of contract because "Skinner's duties to

Carthaginian are unambiguously defined by the Agreement."
(Paper 3 at 6).  In its Complaint, Carthaginian states that
an agreement existed between Skinner and itself, and that
Skinner breached that agreement.  (Paper 1).  This is all
that is needed to state a claim for breach of contract, and
dismissal under Rule 12(b)(6) is therefore inappropriate.
The meaning of contract terms and the question of whether a
party's behavior breached those terms is more appropriate
at the summary judgment stage.

Skinner also argues that Carthaginian cannot state a
claim for replevin, because the items in question were not
unlawfully taken or retained.  Skinner is correct in
stating that, under Massachusetts law, a claim for replevin
requires that the goods in question were unlawfully taken
or retained.  Mass. Gen. L. ch 247 § 7.  Skinner may also
be correct in stating that Carthaginian will not be able to
show that the goods in question were unlawfully taken or
retained, but that is a question properly addressed on
summary judgment, not on a motion to dismiss under Rule
12(b)(6).  I therefore recommend that this Court deny
Skinner's motion to dismiss for failure to state a claim.

Res Judicata

The doctrine of res judicata precludes any claim arising from facts substantially identical to those pled in a prior lawsuit that has been concluded by a final judgment. Allen v. McCurry, 449 U.S. 90, 94 (1980); Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 289 (2d Cir. 2000); Berlitz Schools of Languages of America, Inc. v. Everest House, 619 F.2d 211, 215 (2d Cir. 1980). Res judicata applies where 1) the previous action involved an adjudication on the merits; 2) the previous action involved the plaintiffs or those in privity with them; and 3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.[2] Storey v. Cello Holdings, 347 F.3d 370, 380-81 (2d Cir. 2003); Monahan, 214 F.3d at 285. Here, Carthaginian's previous federal court action involved the same parties as the present action. Thus, the only issues remaining are whether this Court's dismissal of the previous action was an adjudication on the merits, and whether the claims

---

[2] Federal common law and the policies supporting res judicata guide our analysis of the preclusive effect of decisions of other federal courts. Migra v. Warren City School Dist. Bd. of Education, 465 U.S. 75, 81 (1984); Allen v. McCurry, 449 U.S. at 96.

asserted here could have been raised in the previous action.

In the previous action, Carthaginian's complaint was dismissed under Fed. R. Civ. P. 12(b)(6). Carthaginian suggests the dismissal resulted from the "demanding standard of the RICO [statute]," and not a proper and equitable adjudication of the merits of the case. (Paper 5). However, Fed. R. Civ. P. 41(b) states that

> [u]nless the court in its order for dismissal otherwise specifies, a dismissal... other than... for lack of jurisdiction, for improper venue, or for failure to join a party... operates as an adjudication upon the merits.

It is well-settled in the Second Circuit that the dismissal of a complaint for failure to state a claim upon which relief can be granted is presumed to be on the merits, unless the record states otherwise, and, the judgment has the same effect as res judicata as though rendered after trial. Criales v. American Airlines, 105 F.3d 93, 97 (2d Cir. 1997); Sweater Bee by Banff, Ltd. v. Manhattan Industries, Inc., 754 F.2d 457, 462 (2d Cir. 1985); Mitchell v. National Broadcasting Co., 553 F.2d 265, 271 (2d Cir. 1977).

A dismissal under Fed. R. Civ. P. 12(b) does not

always constitute an adjudication on the merits, however. For example, where claims are dismissed for a lack of jurisdiction, the dismissal falls under the exceptions of Fed. R. Civ. P. 41(b) and is not an adjudication on the merits.  The Supreme Court has interpreted the term "jurisdiction" under Fed. R. Civ. P. 41(b) to include a plaintiff's failure to comply with statutory prerequisites. Costello v. United States, 365 U.S. 265, 285 (1961).  The exception encompasses "those dismissals which are based on a plaintiff's failure to comply with a precondition requisite to the Court's going forward to determine the merits of his substantive claim."  Id.

In this case, however, the dismissal of Carthaginian's previous action does not fall under the jurisdictional exception.  Under the RICO statute, standing is not jurisdictional in nature, but is rather an element of the merits.  Lerner v. Fleet Bank, N.A., 318 F.3d 113, 129-30 (2d Cir. 2003).  RICO standing is "intertwined with the merits of the action, such that its determination requires an evaluation of the merits of the action and makes any potential distinction between the merits and RICO standing exceedingly artificial."  Lerner, 318 F.3d at 129-30.  This

10

Court's dismissal of Carthaginian's RICO claim was an adjudication on the merits.

To successfully assert its res judicata defense, Skinner must also show that Carthaginian could have raised its breach of contract and replevin claims in the previous action. Res judicata precludes parties from litigating issues that were or could have been raised in a prior proceeding. Perez v. Danbury Hosp., 347 F.3d 419, 426 (2d Cir. 2003). A Rule 12(b)(6) dismissal "will not bar a second action if new facts have come into existence or have been alleged for the first time and it was the absence of these facts that made the first complaint defective." Criales, 105 F.3d at 97 (quoting 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, Civil 2d § 2373, at 408 (1995)). Carthaginian has not alleged any facts that differ from those in the previous action. The facts alleged in this action existed at the time Carthaginian filed its previous complaint and when this Court dismissed its previous action. Thus, Carthaginian had an opportunity to raise all of the claims it has raised in this action during the previous action. Even after this Court dismissed the previous action, Carthaginian could

11

have moved for leave to amend the pleadings.  See Platsky
v. CIA, 953 F.2d 26, 29 (2d Cir. 1991) (holding that pro se
plaintiff should have been allowed to file amended
pleadings where allegations suggested a legally cognizable
claim).  Alternatively, Carthaginian could have appealed
the decision.  It declined to do either and instead brought
this separate action.

Relying on Flaherty v. Lang, 199 F.3d 607, 616 (2d
Cir. 1999), Carthaginian contends that because it filed the
previous action pro se, the Court should not foreclose its
opportunity to litigate its present claims.  In Flaherty,
the Second Circuit declined to apply res judicata against
the claims of a pro se plaintiff, holding that he did not
have a full and fair opportunity to litigate the merits of
a number of supplemental claims.  Flaherty, 199 F.3d at
616.  The Second Circuit was reluctant to apply res
judicata because of the specific circumstances involving
the supplemental claims.  "[W]e are unwilling in these
muddled circumstances to impose the drastic remedy of
foreclosing a party from litigating an essential issue."
Flaherty, 199 F.3d at 616.

Although the Second Circuit placed emphasis on the

12

plaintiff's pro se status in <u>Flaherty</u>, it was not the primary reason the court decided not to apply res judicata. "Our reluctance to foreclose Flaherty from litigating his retaliation claims rests on the circumstances of the instant case, and *in part* on Flaherty's pro se status." <u>Id.</u> (emphasis added).  The circumstances of Flaherty's case involved a number of supplemental claims that the court did not specifically address in its dismissal of the original claims.  <u>Id.</u>  Carthaginian, in contrast, raised only one claim in the previous action.  However, in his dismissal, Judge Murtha noted that Carthaginian could bring a breach of contract claim, but he failed to specifically address the merits of that claim.

Carthaginian correctly points out that this Court should liberally construe the pleadings of a pro se litigant.  However, this same deference need not apply to this Court's res judicata analysis.  Courts regularly preclude the claims of pro se plaintiffs on res judicata grounds.  <u>See</u>, <u>e.g.</u>, <u>Salahuddin v. Jones</u>, 992 F.2d 447, 449 (2d Cir. 1993) (affirming dismissal of pro se plaintiff's claims on grounds of res judicata, and emphasizing the strong public interest in avoiding relitigation).

13

Nonetheless, "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." Traguth v. Zuck, 710 F.2d 90 (2d Cir. 1983). In the limited circumstances of this case, I recommend that the Court exercise its discretion and decline to bar Carthaginian's current claims under res judicata.

Venue

Finally, Skinner moves to dismiss Carthaginian's claims for improper venue, or in the alternative to transfer venue to the District of Massachusetts. Skinner argues that the forum selection clause in the original contract requires that this action be brought in the District of Massachusetts. Carthaginian does not contest the fact that the contract contained a forum selection clause, but argues that "considerable weight should be given to the Plaintiff's choice of forum," and that Carthaginian's representative is aged and unable to travel to large cities. (Paper 5 at 6).

Skinner bases its entire argument for dismissal under

14

Rule 12(b)(3) on the existence of the forum selection clause. Even if the clause is valid and enforceable, the clause itself does not determine whether venue is improper. "Where a venue is proper under the federal statute, the existence of a forum selection clause providing for a different venue does not make that district 'wrong' within the meaning of Section 1406(a)." BRM Indus. v. Mazak Corp., 42 F. Supp. 2d 176, 180 (D. Conn. 1999).

When subject matter jurisdiction is based on diversity of citizenship, venue is governed by 28 U.S.C. § 1391(a). That statute provides that an action may be brought in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). In this case, there is only one defendant, a Massachusetts company. A corporate defendant is "deemed to reside in any judicial district in which it is subject to personal jurisdiction" for the purposes of the venue statute. 28 U.S.C. § 1391(c). Skinner does not

contend that it is not subject to personal jurisdiction, so venue may be proper in this District.[3]  It is unnecessary to determine whether venue is proper, however, because the Second Circuit has indicated that transfer under 28 U.S.C. § 1404(a) is appropriate when a valid forum-selection clause designates a different federal district court as a proper forum.  Jones v. Weibrecht, 901 F.2d 17, 19 (2d Cir. 1990).[4]

Federal common law governs the question of whether transfer under § 1404(a) is appropriate in a diversity case involving a forum selection clause.  Jones v. Weibrecht, 901 F.2d 17, 19 (2d Cir. 1990); see also Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, (1988).  Section 1404(a) provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

---

[3] It is unclear from the facts presented whether Skinner would be subject to personal jurisdiction in Vermont. Without more, it is impossible to tell whether venue is proper.

[4] In Jones, the Second Circuit affirmed the district court's decision to dismiss the complaint, rather than transfer the action to another district.  Jones, 901 F.2d at 18.  The forum selection clause in question designated only a state court, and not another federal district court as the appropriate venue.  Id.  As such, transfer under § 1404(a) was unavailable to the defendant.

where it might have been brought." Section 1404(a) is intended to place broad discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)); Country Home Prods. v. Schiller-Pfeiffer, Inc., 350 F. Supp. 2d 561, 569 (D. Vt. 2004). In contract cases, a forum-selection clause, though not dispositive, weighs heavily in the analysis under section 1404(a). Stewart, 487 U.S. at 29, 31. A district court will also consider the convenience of a given forum in light of the parties' expressed preference, and the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power. Id. at 29-30; In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992).

Skinner contends that the forum-selection clause in its contract with Carthaginian, the convenience of witnesses, and the location of relevant evidence weigh in favor of a transfer to Massachusetts. (Paper 3). The forum-selection clause states:

> The Agreement shall be governed by the laws of the
> Commonwealth of Massachusetts . . . . The Consignor

17

> agrees that any suit for the enforcement of this
> Agreement may be brought, and any action against
> Skinner in connection with the transactions
> contemplated by this Agreement shall be brought, in
> the courts of the Commonwealth of Massachusetts or
> any federal court sitting therein. The Consignor
> consents to the nonexclusive jurisdiction of such
> courts and waives objection that it may now or
> hereafter have to the venue of any such suit.

(Paper 3, Ex. A). In addition to the forum-selection clause, the Court also considers the convenience of the parties and fairness in determining whether a venue transfer is appropriate. Stewart, 487 U.S. at 29, 31; In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992). To begin with, neither party resides in Vermont. Carthaginian is a Nevada corporation, and Skinner is a Massachusetts corporation (Paper 1; Paper 3.) All of Skinner's employees and thus most of the witnesses in this case are located in Massachusetts as well. Additionally, the artwork and antiques in dispute are located in Massachusetts.

Carthaginian does not contend that it failed to receive notice of the forum-selection clause or that the forum selection clause is invalid. Instead, Carthaginian asserts that its interest in having the case heard in Vermont outweighs the factors in favor of transfer to

Massachusetts.  Carthaginian first notes that Skinner voluntarily entered into the contract in Vermont. Additionally, Carthaginian asserts that its representative, Donald Flynn, experiences discomfort traveling in large cities.  Finally, Carthaginian argues that Skinner's resources exceed those of Carthaginian, making travel less burdensome for Skinner.

Although Skinner did enter into the contract in Vermont, the contract clearly and unambiguously sets Massachusetts as the selected forum for disputes arising under that contract.  While the Court sympathizes with Flynn's discomfort in traveling, the distance between Vermont and Massachusetts is minimal.  Further, since Flynn is either a resident of Maine or Nevada and must travel regardless of where, the Court gives little weight to the consideration of Flynn's personal preference for small cities.  Additionally, due to the proximity of Massachusetts to Vermont, it seems doubtful that substantial additional resources would be required for Flynn's travel from Maine or Nevada to Massachusetts, rather than Vermont.

## Conclusion

19

For the reasons set forth above, I recommend that

Skinner's motion to dismiss under 12(b)(3), 12(b)(6) and

res judicata principles be DENIED and its motion to

transfer venue to the District of Massachusetts be GRANTED.

Dated at Burlington, in the District of Vermont, this

3<u>rd</u> day of June, 2005.

<u>/s/ Jerome J. Niedermeier</u>
Jerome J. Niedermeier
United States Magistrate Judge


Any party may object to this Report and Recommendation
within 10 days after service by filing with the clerk of
the court and serving on the magistrate judge and all
parties, written objections which shall specifically
identify the portions of the proposed findings,
recommendations or report to which objection is made and
the basis for such objections.  Failure to file objections
within the specified time waives the right to appeal the
District Court's order.  <u>See</u> Local Rules 72.1, 72.3, 73.1;
28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and
6(e).

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2005 JUN 9 AM 8 18

CLERK
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| CARTHAGINIAN | ) | |
| FINANCIAL CORPORATION, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Docket No.  2:05-CV-3 |
| | ) | |
| SKINNER, INC., | ) | |
| Defendant | ) | |

### DEFENDANT'S MOTION FOR EXTENSION OF TIME IN WHICH TO FILE ITS OPPOSITION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND INCORPORATED MEMORANDUM OF LAW

Defendant, Skinner, Inc., by and through its attorneys, Gravel and Shea, hereby moves this Court pursuant to Fed. R. Civ. P. 6(b) for an extension of time until June 24, 2005, for it to file its opposition to the Report and Recommendation of the Magistrate Judge.  The grounds for this motion are set forth in the incorporated Memorandum of Law.

### MEMORANDUM OF LAW

Fed. R. Civ. P. 6(b) authorizes this Court to enlarge the time within which "an act is required or allowed to be done at or within a specific time. . . for cause shown."  As more completely described below, there is such cause in this instance.

The Magistrate Judge's Report and Recommendation was served on Defendant on June 3, 2005, in which case the opposition is due on or before June 17, 2005. This Motion is being filed before that deadline.

Defendant's counsel has several dispositive motions to file in the next two weeks, as well as professional and personal commitments that will cause her to be out of the office for a period of time. Pursuant to Local Rule 7.1(b), the undersigned sought consent to this motion from Plaintiff's counsel, but Plaintiff's counsel has refused to agree to the extension. The extension is modest, so no undue delay or prejudice will result if the requested extension is granted.

## CONCLUSION

Defendant has shown cause why the Court should exercise its discretion and extend the deadline for the filing of the opposition to the Magistrate Judge's Report and Recommendation until June 24, 2005. Accordingly, Defendant respectfully requests that its Motion for Extension of Time be granted.

Dated:    Burlington, Vermont
          June 8, 2005

Heather Rider Hammond, Esq.
Gravel and Shea
76 St. Paul Street, 7th Floor
P. O. Box 369
Burlington, VT  05402-0369
(802) 658-0220
For Defendant

## CERTIFICATE OF SERVICE

I, Heather Rider Hammond, Esq., attorney for Defendant, certify that on June 8, 2005, I

served Defendant's Motion for Extension of Time in Which to File its Opposition to the

Magistrate Judge's Report And Recommendation and Incorporated Memorandum of Law, on

Thomas Niksa, Esq., by causing a copy to be mailed, postage prepaid to him at 92 South Main

Street, 1B, St. Albans, VT  05478.

    Dated:        Burlington, Vermont
                  June 8, 2005


                                    Heather Rider Hammond
                                    Heather Rider Hammond, Esq.
                                    Gravel and Shea
                                    76 St. Paul Street, 7th Floor
                                    P. O. Box 369
                                    Burlington, VT  05402-0369
                                    (802) 658-0220
                                    For Defendant

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

CARTHAGINIAN                      )
FINANCIAL CORPORATION,            )
                    Plaintiff     )
                                  )
         v.                       )          Docket No.  2:05-cv-3
                                  )
SKINNER, INC.,                    )
                    Defendant     )


### DEFENDANT'S OBJECTIONS TO THE
### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant, Skinner, Inc., by and through its attorneys, Gravel and Shea, objects to certain

portions of the Magistrate Judge's Report and Recommendation, dated June 3, 2005, as detailed

below.


I.    THE DISTRICT COURT IS TO MAKE AN INDEPENDENT DETERMINATION OF
      ALL OBJECTIONS TO THE REPORT AND RECOMMENDATION OF A
      MAGISTRATE JUDGE.

Under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b), a district court is directed to

make a *de novo* determination based on its own independent review of the record of any portion

of the Magistrate Judge's Report and Recommendation to which objection is made.  As the

Advisory Committee Notes to Rule 72(b) state, "[t]he term 'de novo' signifies that the

magistrate's findings are not protected by the clearly erroneous doctrine."  *See also United States*

*v. Raddatz*, 447 U.S. 667, 690 (1980) ("The phrase 'de novo determination' has an accepted meaning in the law. It means an independent determination of a controversy that accords no deference to any prior resolution of the same controversy") (Stewart, J., dissenting). It is not necessary that the Magistrate Judge be found to have committed error in his findings or conclusions for the district court to reach a different result; it is enough that the District Judge "simply views things differently, weighs things differently, considering the same or different facts, legal doctrines or policies." 7 (Part 2) *Moore's Federal Practice* ¶ 72.04[10.-2] (2d ed. 1996).

Defendant in this case seeks *de novo* review of two main points. First, it objects to the Magistrate Judge's failure to dismiss Plaintiff's claims on res judicata grounds, despite his conclusion that Plaintiff had a full and fair opportunity to raise all of its current claims in its first complaint. Second, it objects to the Magistrate Judge's conclusion that dismissal of the breach of contract claim under rule 12(b)(6) would be inappropriate, without examining the terms of the agreement that governs the contractual duties between the parties.

II.     BECAUSE PLAINTIFF COULD HAVE RAISED ITS CURRENT CLAIMS IN THE PREVIOUS LITIGATION, THE INSTANT CASE SHOULD BE DISMISSED ON RES JUDICATA GROUNDS.

As discussed more thoroughly in Skinner's Motion to Dismiss, the acts and omissions alleged to have been performed by Skinner in Carthaginian Financial Corporation's ("Carthaginian") complaint are the same as those raised in Carthaginian's previous action, which was dismissed by this Court in December of 2004. The Magistrate Judge acknowledged that:

> Carthaginian [Financial Corporation] has not alleged any facts that differ from those in the previous action. The facts alleged in this action existed at the time Carthaginian filed its previous complaint and when this Court dismissed its previous action. Thus, Carthaginian had an opportunity to raise all of the claims it has raised in this action during the previous action.

Magistrate Judge's Report and Recommendation ("Report"), at 11-12. Moreover, the Magistrate also noted that, upon dismissal of the first action, Carthaginian could have moved for leave to amend the pleadings, or could have appealed the decision, but brought this action instead. *Id.* at 12. Under well-established law, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action." *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999) (internal citation omitted) (emphasis in original). As a result, the Magistrate Judge should have concluded, as a matter of law, that res judicata barred Plaintiff's claims.

Instead, the Magistrate Judge recommended that, "[i]n the limited circumstances of this case," this Court should "exercise its discretion" and decline to bar Carthaginian's current claims under res judicata, despite the fact that courts "regularly preclude the claims of pro se plaintiffs." Report, at 13-14. As support for his recommendation, the Magistrate Judge cites *Traguth v. Zuck*, 710 F.2d 90 (2d Cir. 1983) for the proposition that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Id.* at 95. *Traguth*, however, is completely dissimilar, both legally and factually, to this case.

GRAVEL AND SHEA
ATTORNEYS AT LAW
P. O. BOX 369
BURLINGTON, VERMONT
05402-0369

In *Traguth*, Ms. Zuck, a pro se defendant, wrote to the district judge requesting an extension of time to answer a complaint, in which she explained her version of the events giving rise to the lawsuit and detailed her attempts to get an attorney. *Id.* at 92. The court responded by giving her a deadline to answer the complaint, but included a requirement that she secure counsel, stating that plaintiffs could file a motion for default judgment if counsel did not enter an appearance before the deadline. *Id.* Ms. Zuck did not secure counsel, but did file a pro se answer and affirmative defenses before the court-ordered deadline. She subsequently filed a pro se motion to dismiss for lack of subject matter jurisdiction, which the court refused to entertain, instead inviting plaintiffs to file their motion for default judgment, since Ms. Zuck had failed to comply with the court's order to retain counsel. *Id.* That motion was granted, despite Ms. Zuck's request for an extension of time in which to respond to it, and despite the fact that she had answered the complaint. The Second Circuit held that the district court had abused its discretion by imposing a requirement on Ms. Zuck that she retain counsel, stating, "[t]hat condition . . . improperly denied Zuck's statutory right to self-representation and was thus unenforceable by a finding of default after an answer was filed within the extension period." *Id.* 93.

The Second Circuit also concluded that the district court had abused its discretion by failing to set aside the finding of default under Fed. R. Civ. P. 55(c) when Ms. Zuck had presented meritorious defenses to the counts in the complaint, and by failing to take into account her pro se status. The Court's conclusion on this point, quoted in part by the Magistrate Judge, is worth reciting in full, since it illustrates the major differences between *Traguth* and the instant case:

The district court also abused its discretion in failing to take into account Zuck's *pro se* status. Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training. While this right does not exempt a party from compliance with relevant rules of procedural and substantive law, it should not be impaired by harsh application of technical rules. Trial courts have been directed to read *pro se* papers liberally and to allow amendments of *pro se* complaints fairly freely.

The court's duty is even broader in the case of a *pro se* defendant who finds herself in court against her will with little time to learn the intricacies of civil procedure. Zuck had no reason to know, upon service of the complaint, that she faced default if she did not answer within twenty days. She searched in good faith for a lawyer to represent her and, failing in that, she responded within that period diligently, if unskillfully, to every pronouncement of the court.

*Id.* at 95. As demonstrated above, the issues in *Traguth* were (i) whether the court abused its discretion by attaching conditions on the defendant's extension of time to answer the complaint, and (ii) whether default judgment – by its very nature a disfavored method of resolving disputes – should have been entered (and subsequently not set aside) against a pro se defendant who attempted at all times to comply with the law and the court's directives. By contrast, Carthaginian filed a pro se complaint with no basis in law, failed to respond to Skinner's motion to dismiss, failed to exercise its right to seek amendment of that complaint or to file an appeal, and instead hired an attorney who chose to file a new complaint with two causes of action that the Magistrate agrees could have been raised in the first case.

To dismiss this case on res judicata grounds would not constitute the "harsh application of technical rules" warned against by the *Traguth* Court. *Id.* at 95. As the United States Supreme Court has stated, in "disputes over private rights by private litigants," "no significant harm flows from enforcing a rule that affords a litigant one full and fair opportunity to litigate an

GRAVEL AND SHEA
ATTORNEYS AT LAW
P. O. BOX 369
BURLINGTON, VERMONT
05402-0369

issue, and there is no sound reason for burdening the courts with repetitious litigation."

*Standefer v. United States*, 447 U.S. 10, 24 (1980). With respect, there are no "limited

circumstances" in this case that should override the fact that the claims in the instant case are

plainly barred by the doctrine of res judicata. The Magistrate Judge does not dispute Skinner's

contention that Carthaginian had a full and fair opportunity to litigate its claims in its first action.

Skinner, as well as this Court, are entitled to repose from repetitious and frivolous litigation, and

this Court should reject the Magistrate Judge's recommendation and dismiss the complaint on

that basis.

III.    DISMISSAL OF A BREACH OF CONTRACT CLAIM UNDER RULE 12(B)(6) IS
        APPROPRIATE WHERE IT IS PRECLUDED BY AN UNAMBIGUOUS CONTRACT
        PROVISION.

As set forth more completely in Skinner's Motion to Dismiss, Plaintiff has alleged that

Skinner had a "duty to sell the [consignment] items for the highest possible bid," and to "earn the

highest possible return for Plaintiff," and breached that duty by improperly cataloguing certain

items and by "encouraging and facilitating a 'knock-out' auction" of a painting. Complaint, ¶¶ 5,

8. Skinner's obligations to Carthaginian under the consignment agreement (the "Agreement"),

however, are set forth in, and limited by, the terms of that Agreement. The Agreement

unambiguously allowed Skinner the sole discretion to determine the time, place and manner of

the sale, to place the auction items into saleable lots, to determine the pre-sale high and low

estimate of the items, and to reject a bid that it considered too low and place items in a

subsequent sale at a reduced price. *See* Skinner's Motion to Dismiss, at 6-7.[1] Based upon the express language of the Agreement, Skinner argued that Plaintiff had failed to identify a contractual duty that had been breached by it, and, as a result, the breach of contract claim should be dismissed as a matter of law.

The Magistrate Judge, instead of examining the language of the Agreement, found that Carthaginian had met its obligation to state a claim upon which relief may be granted merely by alleging that (i) an agreement existed between Skinner and itself, and (ii) that Skinner breached that agreement. Report, at 7. He recommended against dismissal of the breach of contract claim, stating that "[t]he meaning of contract terms and the question of whether a party's behavior breached those terms is more appropriate at the summary judgment stage." *Id.*

Respectfully, the Magistrate erred in failing to consider whether the plain language of the Agreement defeated Plaintiff's breach of contract claim as a matter of law. Under Massachusetts law, in order to state a claim for breach of contract, a party must allege (1) that the parties reached a valid and binding agreement; (2) that the defendant breached the terms of the agreement; and (3) that the nonbreaching party suffered damages as a result of that breach.

---

[1] Paragraph 4 of the Agreement states that: "The time, place, manner and all conditions of sale, including the division of the Property into saleable lots, shall be determined solely by Skinner." Agreement, ¶ 4. The Agreement also authorized Skinner to determine the pre-sale high and low estimate of the Property, and states that it "reserves the right to revise any such estimate." *Id.* ¶ 5.
The Agreement goes on to state that:
Skinner reserves the right, but undertakes no obligation, to reject the opening bid of the Property if such bid is deemed by Skinner, in its sole discretion, to be unacceptably low. In the event that the Property remains unsold, Skinner may at its option (a) reoffer the Property at a reduced pre-sale estimate at a subsequent public sale to the highest bidder, or (b) return the unsold Property to the Consignor at the Consignor's expense.
*Id.* ¶ 9.

*Michelson v. Digital Financial Svcs.*, 167 F.3d 715 (1st Cir. 1999).[2]  In this case, the only

contract between the parties is the Agreement.  In order to determine whether Carthaginian has

stated a claim for breach of contract, it is necessary for the Court to examine the language of the

Agreement. *See Epstein, Becker & Green, P.C. v. Atlas Venture*, No. 025445BLS, 2003 WL

1861558, at *3 (Mass. Super. Mar. 24, 2003) ("[the contract] is central to the entire dispute and,

as such, it must be interpreted by the Court in reaching its conclusion on the pending [12(b)(6)]

motion"); *Moll Industries, Inc. v. Oral-B Laboratories, Inc.*, No. 011301BLS, 13 Mass. L. Rptr.

569, 2001 WL 1194678, at *5 (Mass. Super. July 17, 2001) (same).

"Under Massachusetts law, contract interpretation is a question of law for the court unless

the contract is ambiguous." *Nicolaci v. Anapol*, 387 F.3d 21, 26 (1st Cir. 2004).  Likewise, "[t]he

question of whether a contract term is ambiguous is one of law for the court." *Id.*  The contract

"should be construed to give it effect as a rational business instrument and in a manner which

will carry out the intent of the parties." *Starr v. Fordham*, 420 Mass. 178, 192, 648 N.E.2d 1261,

1270 (Mass. 1990).  As a result, if the parties' intent is unambiguously conveyed by the plain

meaning of the contract, its interpretation is a matter of law and is capable of being resolved by

dismissal under rule 12(b)(6).

Massachusetts courts and federal courts applying Massachusetts law have not hesitated to

dismiss breach of contract claims under rule 12(b)(6) if the plain language of the contract

indicates that there are no facts alleged by the plaintiff which would entitle it to relief.  For

---

[2] Under the terms of the Agreement, Massachusetts law must apply to this case. *See* Agreement,
¶ 14 ("The Agreement shall be governed by the laws of the Commonwealth of Massachusetts (excluding
the laws applicable to conflicts or choice of law)").

example, in *Nicolaci*, the First Circuit determined that dismissal of plaintiffs' contractual indemnification claims was proper under rule 12(b)(6). *Nicolaci*, 387 F.3d at 25 ("Reading the contract as a whole, including the indemnification clause, the release clause, and the exclusion of the date of execution of the stock purchase agreement from the indemnification clause, we conclude that the contract is unambiguous and the court was correct to enter judgment against the Nicolacis"). In *Moll Industries*, the Massachusetts Superior Court held that, under the plain language of the contract, defendant had not engaged in any conduct that could constitute a breach of contract. *Moll Industries*, 2001 WL 1194678, at *7; *see also Epstein, Becker & Green, P.C.*, 2003 WL 1861558, at *4-5 (breach of contract claim for failure to pay rent dismissed under rule12(b)(6) because unambiguous language of letter agreement set forth and defined circumstances under which defendant had no obligation to pay rent); *McCarthy v. Estate of McCarthy*, Mass. App. Div., Northern Dist. No. 9785, 2002 WL 1067179, at *2 (Mass. App. Div., May 20, 2002) (breach of contract claim against estate dismissed because plain language of contract stated that payment obligations shall terminate upon death of party).

    As demonstrated above, it is clear that the Magistrate Judge erred in failing to evaluate the Agreement to determine whether it was ambiguous and, if not, whether its language precludes Carthaginian's breach of contract claim. When a written contract is integral to the allegations made in the complaint, it is not only appropriate, but also necessary, that the Court evaluate the contract language in the course of ruling on a rule 12(b)(6) motion, and not just rely on the bare allegations made by the plaintiff. *See Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 36 (1st Cir. 2001) (district court did not err in granting motion to dismiss

GRAVEL AND SHEA
ATTORNEYS AT LAW
P. O. BOX 369
BURLINGTON, VERMONT
05402-0369

despite fact that complaint was "legally sufficient," because "[i]n light of the [contract] . . . which became part of the pleadings for the 12(b)(6) motion . . . and the district court's finding that the agreement was unambiguous and released [defendant] from liability as a matter of law, [defendant] cannot be held liable by [plaintiffs] for these claims") (applying Maine law).

Because the Magistrate Judge failed to consider the Agreement in rendering his decision, this Court should independently evaluate the Agreement and conclude that Plaintiff's contract claim fails as a matter of law and should be dismissed under rule 12(b)(6).

CONCLUSION

For the foregoing reasons, Skinner respectfully objects to the referenced portions of the Magistrate Judge's Report and Recommendation, and requests that this Court make a *de novo* determination of those portions based on its independent review of the record, and dismiss the Complaint.

Dated:    Burlington, Vermont
          June 23, 2005

Heather Rider Hammond, Esq.
Gravel and Shea
76 St. Paul Street, 7th Floor
P. O. Box 369
Burlington, VT  05402-0369
(802) 658-0220
For Defendant

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

| | | |
|---|---|---|
| CARTHAGINIAN | ) | |
| FINANCIAL CORPORATION, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Docket No. 2:05-cv-3 |
| | ) | |
| SKINNER, INC., | ) | |
| Defendant | ) | |

## CERTIFICATE OF SERVICE

I, Heather Rider Hammond, Esq., attorney for Defendant, certify that on June 23, 2005, I

served Defendant's Objections to the Magistrate Judge's Report And Recommendation, on

Thomas Niksa, Esq., by causing a copy to be mailed, postage prepaid to him at 92 South Main

Street, 1B, St. Albans, VT 05478.

Dated:    Burlington, Vermont
June 23, 2005

*Heather Rider Hammond*

Heather Rider Hammond, Esq.
Gravel and Shea
76 St. Paul Street, 7th Floor
P. O. Box 369
Burlington, VT 05402-0369
(802) 658-0220
For Defendant

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT


Carthaginian Financial Corp.,    :
    Plaintiff,    :
        :
        :
    v.    :  File No. 2:05-CV-3
        :
        :
Skinner, Inc.,    :
    Defendant.    :


**ORDER**

The Report and Recommendation dated June 9, 2005 is hereby renamed an Opinion and Order in light of the consent to proceed before a Magistrate Judge filed August 25, 2005, pursuant to 28 U.S.C. 636(c).

The Clerk of Court is hereby ordered to transfer this case to the District of Massachusetts.


Dated at Burlington, in the District of Vermont, this 26th day of August, 2005.


/s/Jerome J. Niedermeier

Jerome J. Niedermeier
United States Magistrate Judge

# UNITED STATES DISTRICT COURT

### OFFICE OF THE CLERK
#### DISTRICT OF VERMONT
#### FEDERAL BUILDING
## BURLINGTON, VERMONT  05402-0945

RICHARD PAUL WASKO
CLERK

■  P.O. BOX 945
BURLINGTON 05402-0945
(802) 951-6301
❑   P.O. BOX 998
BRATTLEBORO 05302-0998
(802) 254-0250
❑   P.O. BOX 607
RUTLAND 05702-0607
(802) 773-0245

August 29, 2005

Ms. Sarah Allison Thornton
Clerk
United States District Court
John Joseph Moakley United States Courthouse
Suite 2300
One Courthouse Way
Boston, MA 02210-3002

      In Re: Carthaginian Financial Corporation v. Skinner, Inc.
         Our Docket No. 2:05-cv-3

Dear Clerk of Court:

      The above captioned case has been transferred to your district pursuant to
Doc. No. 15, Opinion and Order.  Enclosed is a certified copy of the docket sheet.  Please visit
URL for Quick Query: https://ecf.vtd.circ2.dcn/cgi-bin/pquery.pl  to download any documents
you may need.

              Sincerely,

              Richard Paul Wasko,
              Clerk

              By:  _Jessica Hook_
                  Deputy Clerk

## U.S. District Court
### District of Vermont (Burlington)
### CIVIL DOCKET FOR CASE #: 2:05-cv-00003-jjn

Carthaginian Financial Corporation v. Skinner, Inc.
Assigned to: Jerome J. Niedermeier
Referred to:
Demand: $275000
Lead Docket: None
Related Cases: None
Case in other court: None
Cause: 28:1331 Fed. Question: Breach of Contract

Date Filed: 01/06/05
Jury Demand: Plaintiff
Nature of Suit: 195 Contract Product Liability
Jurisdiction: Diversity

**Plaintiff**
----------------------

**Carthaginian Financial Corporation**        represented by    **Thomas Niksa**
92 South Main Street, 1B
St. Albans, VT 05478
(802) 527-1010
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**
----------------------

**Skinner, Inc.**        represented by    **Heather Rider Hammond**
Gravel and Shea
P.O. Box 369
Burlington, VT 05402-0369
(802)658-0220
Fax : 96581456
Email: docketclerk@gravelshea.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Filing Date | Num# | Docket Text |
|---|---|---|
| 01/06/2005 | 1 | COMPLAINT against Skinner, Inc. filed by Carthaginian Financial Corporation. (Filing fee $150, receipt number #21947) Summons & Waivers issued. LR 73.1 Form Issued. (Attachments: # 1)(jse, ) [Entry Date 01/06/2005] |
| 01/18/2005 | 2 | WAIVER OF SERVICE Returned Executed by Carthaginian Financial Corporation. Skinner, Inc. waiver sent on 1/13/2005, answer due |

| | | |
|---|---|---|
| | | 3/14/2005. (jse, ) [Entry Date 01/18/2005] |
| 03/15/2005 | 3 | MOTION to Dismiss or, in the alternative, to Transfer Venue to the District of Massachusetts by Skinner, Inc. Responses due by 3/29/2005. Note: 3 additional days will be allowed for mailing in accordance with L.R. 6.1. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit 1# 7 Exhibit 2)(jlh, ) Modified on 6/3/2005 (jse, ). |
| 03/16/2005 | 4 | AFFIDAVIT of Janet Santaguida by Skinner, Inc.(jlh, ) [Entry Date 03/16/2005] |
| 03/28/2005 | 5 | RESPONSE in Opposition in re 3 MOTION to Dismiss filed by Carthaginian Financial Corporation. (jlh, ) [Entry Date 03/29/2005] |
| 04/13/2005 | 6 | REPLY to Response to Motion in re 3 MOTION to Dismiss filed by Skinner, Inc. (jlh, ) [Entry Date 04/13/2005] |
| 05/02/2005 | 7 | PLAINTIFF CARTHAGINIAN'S RESONSE TO SKINNER, INC, REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS UNDER FED R. CIV.P.12(B)(6) OR (B)(3) OR TRANSFER VENUE TO THE DISTRICT OF MASSACUSETTS. In re: 3 MOTION to Dismiss filed by Carthaginian Financial Corporation. (jlh, ) [Entry Date 05/02/2005] |
| 05/06/2005 | 8 | MOTION to Strike and incorporated memorandum of law in re 7 Reply to Response to Motion, by Skinner, Inc. Responses due by 5/20/2005. Note: 3 additional days will be allowed for mailing in accordance with L.R. 6.1. (jlh, ) [Entry Date 05/06/2005] |
| 06/03/2005 | 9 | REPORT AND RECOMMENDATIONS in re 1 Complaint filed by Carthaginian Financial Corporation, 3 MOTION to Dismiss filed by Skinner, Inc., Objections to R&R due by 6/17/2005. Signed by Judge Jerome J. Niedermeier on 6/3/2005. (jlh, ) [Entry Date 06/03/2005] |
| 06/09/2005 | 10 | MOTION for Extension of Time to File Response as to 9 REPORT AND RECOMMENDATIONS re 1 Complaint filed by Carthaginian Financial Corporation,, 3 MOTION to Dismiss filed by Skinner, Inc. by Skinner, Inc. until June 24, 2005. Responses due by 6/23/2005. Note: 3 additional days will be allowed for mailing in accordance with L.R. 6.1. (jlh, ) [Entry Date 06/09/2005] |
| 06/16/2005 | 11 | ORDER granting 10 Defendant's Motion for Extension of Time in Which to File Its Opposition to The Magistrate Judge's Report and Recommendation Responses due by 6/24/2005. Note: 3 additional days will be allowed for mailing in accordance with L.R. 6.1.Signed by Judge William K. Sessions III on 06/16/05. (This is a text only Order.) (eae) |

| | | |
|---|---|---|
| | | [Entry Date 06/16/2005] |
| 06/16/2005 | | Reset Deadlines as to 9 REPORT AND RECOMMENDATIONS re 1 Complaint filed by Carthaginian Financial Corporation,, 3 MOTION to Dismiss filed by Skinner, Inc.,. Objections to R&R due by 6/24/2005 (jam, ) [Entry Date 06/16/2005] |
| 06/24/2005 | 12 | OBJECTION to 9 Report and Recommendations by Skinner, Inc.. (law, ) [Entry Date 06/24/2005] |
| 08/26/2005 | 15 | ORDER: The Report and Recommendation dated June 9, 2005 is hereby renamed an Opinion and Order in light of the consent to proceed before a Magistrate Judge filed August 25, 2005, pursuant to 28 U.S.C. 636(c). The Clerk of Court is hereby ordered to transfer this case to the District of Massachusetts. Signed by Judge Jerome J. Niedermeier on 8/26/2005. (jlh, ) [Entry Date 08/29/2005] |

I hereby attest and certify on
August 29, 2005 ,that
the foregoing document is a full, true and correct
copy of the original on file in my office, and in my
legal custody.
RICHARD PAUL WASKO
Clerk, U.S. District Court
District of Vermont
BY: _____ Hook
Deputy Clerk